COMMONWEALTH vs. THOMAS S. KING.

Plymouth. April 6, 2005. - September 29, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Indictment, Duplicative convictions. *Rape. Constitutional Law,* Vagueness of statute, Double jeopardy, Confrontation of witnesses. *Indecent Assault and Battery. Evidence,* Prior conviction, Fresh complaint, First complaint. *Child Abuse.*

A criminal indictment charging forcible rape of a child in violation of G. L. c. 265, § 22A, gave the defendant adequate notice of the nature of the charges against him and was not defective for failing to allege penetration. [221-222]

Evidence at a criminal trial, which demonstrated that the defendant had forced the young victim to perform fellatio on him and to "lick" his penis, was sufficient as a matter of law to support a jury's finding of penetration and thus a conviction of forcible rape of a child in violation of G. L. c. 265, § 22A. [222-224]

A criminal defendant failed to demonstrate that G. L. c. 265, § 22A, which prohibits the forcible rape of a child, was unconstitutionally vague. [224-225]

A criminal defendant's convictions of forcible rape of a child and indecent assault and battery of a child rested on separate and distinct acts and were therefore not duplicative. [225-226]

A trial court judge properly exercised his discretion to permit impeachment of a criminal defendant with his prior conviction of armed robbery in accordance with the requirements of G. L. c. 233, § 21. [226-228]

Discussion of the origins of the fresh complaint doctrine and a summary of that doctrine as it is currently applied in Massachusetts courts. [228-232]

At the trial of indictments charging forcible rape of a child and indecent assault and battery of a child, there was no error in the admission of fresh complaint testimony under then-existing evidentiary standards or under the confrontation clauses of the Federal and State Constitutions. [232-237]

This court substantially revised the "fresh complaint" doctrine, which permitted the Commonwealth to introduce out-of-court statements seasonably made by a victim after an alleged sexual assault for the purpose of corroborating the victim's own testimony at trial, to create the "first complaint" rule, and set forth the parameters for the new rule's application. [237-248]

INDICTMENTS found and returned in the Superior Court Department on May 24, 2002.

The cases were tried before *Patrick F. Brady*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert O. Berger, III*, for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

The following submitted briefs for amici curiae:

*Lisa J. Steele* for National Association of Criminal Defense Lawyers.

*William J. Meade* for District Attorney for the Bristol District & others.

*Djuna E. Perkins* for Jane Doe, Inc., & others.

*Jane Larmon White*, Committee for Public Counsel Services, for Committee for Public Counsel Services.

*Wendy J. Murphy* for Victim Advocacy and Research Group.

COWIN, J. The defendant, Thomas S. King, appeals from his convictions of forcible rape of a child under sixteen years, G. L. c. 265, § 22A, and indecent assault and battery of a child under fourteen years, G. L. c. 265, § 13B. In part, the defendant argues that the trial judge improperly admitted the testimony of two "fresh complaint" witnesses. Under the fresh complaint doctrine in effect at the time of trial, the Commonwealth was permitted to introduce out-of-court statements seasonably made by the victim after the alleged sexual assault for the purpose of corroborating her own testimony concerning the alleged assault (so-called "fresh complaint" testimony). See, e.g., *Commonwealth* v. *Montanez*, 439 Mass. 441, 445 (2003). There was no error in the judge's admission of the testimony. We affirm the defendant's convictions.

We take this opportunity, however, to reconsider the scope of, and continued necessity for, our present fresh complaint doctrine. In light of changed circumstances we shall describe, we substantially revise the doctrine, which in the future shall be called the "first complaint" doctrine. Under the new doctrine, to be applied only in sexual assault cases tried after the issuance of the rescript in this opinion, the recipient of a complainant's first complaint of an alleged sexual assault may testify about the fact of the first complaint and the circumstances surround-

ing the making of that first complaint. The witness may also testify about the details of the complaint. The complainant may likewise testify to the details of the first complaint (i.e., what she told the first complaint witness), as well as why the complaint was made at that particular time. Testimony from additional complaint witnesses is not admissible.

First complaint testimony may be admitted for a limited purpose only, to assist the jury in determining whether to credit the complainant's testimony about the alleged sexual assault. The testimony may not be used to prove the truth of the allegations. The jury must be so instructed. The timing by the complainant in making a complaint will not disqualify the evidence, but is a factor the jury may consider in deciding whether the first complaint testimony supports the complainant's credibility or reliability. First complaint testimony is not relevant and therefore not admissible under the doctrine where neither the fact of the sexual assault nor the complainant's consent is at issue, as in cases where the identity of the assailant is the only contested issue.

*Facts and procedural history.* On the evidence admitted, the jury could have found the following facts. At the time of the alleged assault, the victim, whom we shall call Alice, was four years old. Her mother and the defendant, who is Alice's biological father, were no longer in a relationship, but had a visitation arrangement concerning Alice: Alice lived and slept at the defendant's apartment on Mondays and Tuesdays. Alice's grandparents and the defendant's wife also lived in the same apartment. The defendant, his wife, and Alice shared a bedroom during her visits: the defendant and his wife slept in one bed, and Alice in another.

One day in February, 2002, Alice walked in on the defendant in the bathroom and he asked her to "lick or scratch" his penis because it was "itchy." He was fully clothed until Alice replied "okay." The defendant then removed his pants and underwear and laid down on his back on the bathroom floor or leaned against the tub. Alice knelt or sat beside him and did as she was told. She did not like the taste of the defendant's penis and so applied bubble-gum flavored toothpaste to it. When she finished licking the toothpaste off the defendant's penis, she put the

toothpaste back and left the bathroom. Alice did not recall any conversation with the defendant during the incident, but remembers that her grandparents were nearby in the living room watching television when she came out of the bathroom.

Later that same day, the defendant drove Alice to her day care center and her mother picked her up there. Alice told her mother about the alleged assault the day after the incident or perhaps one week later, when she was preparing to return to her father's house for another visit. This was the first time Alice disclosed the alleged assault.

According to Alice's mother, on February 18, 2002, at 8:45 A.M., while in the living room of her studio apartment, Alice told her that the defendant had asked her to lick his penis. On hearing Alice's story, Alice's mother telephoned her own mother for advice and then telephoned the police. The following day, Alice and her mother went to the district attorney's office where they spoke with Brockton Detective Erin Kerr about the incident.

The grand jury's indictments allege that the offenses occurred between June, 2000, and February 12, 2002, the period during which Alice was periodically visiting the defendant at his home.[1] A Superior Court judge allowed the defendant's motion in limine seeking a determination of Alice's competency. The judge examined Alice, then six years old, and found her competent. A December 3, 2004, trial of the defendant's case ended in mistrial. Before the mistrial, the judge had ruled, over objection, that the Commonwealth could impeach the defendant (if he testified) with a prior conviction of armed robbery.

The following day, a second jury were empanelled. At this trial, three witnesses testified for the Commonwealth: Alice testified as the complainant, and her mother and Detective Kerr testified as "fresh complaint" witnesses. To minimize the potential

---

[1]Although Alice testified that the abuse occurred between one week and one day prior to her complaint to her mother, the Commonwealth's indictment spans a much longer period. Detective Kerr testified that the child placed the abuse the same day that she disclosed it to her mother. Apparently, the father's visitation schedule was such that the abuse could not have occurred on the day of the report or the day before. Thus, the prosecution's indictment spans a longer period of time in an apparent effort to ensure that it captured every possible date.

prejudicial impact of multiple iterations of Alice's complaint, the judge limited the mother's testimony to a few details of the complaint. The only evidence presented by the defendant was the testimony of his mother. The defendant did not testify, citing the judge's decision (made again at the retrial) to admit his prior conviction for impeachment purposes.

The judge instructed the jury at the time of Alice's mother's testimony about the "fresh complaint" doctrine: "If an alleged victim of a rape or sexual assault tells someone about the event reasonably promptly after the event," then evidence of the statement is admitted "only to corroborate the alleged victim's in-court testimony and not to prove independently that the sexual assault occurred." The judge gave similar instructions before Detective Kerr's testimony, and again in his final instructions.

At the close of the Commonwealth's case, the defendant moved unsuccessfully for a required finding on so much of the indictment that charged rape of a child by force, claiming insufficient evidence of penetration. He renewed this motion at the close of all of the evidence, and again before sentencing. The judge denied the motions, concluding that "[b]ecause licking constituted oral stimulation, and therefore fellatio, proof of penetration was satisfied."

The defendant was found guilty of both offenses and appealed. We transferred this case here on our own motion.

*Discussion.* The defendant challenges his convictions on five bases: (1) the rape indictment was "void" as there was no penetration; (2) there was insufficient evidence to support the rape conviction; (3) both the assault and battery and rape convictions were so closely related as to constitute one crime; (4) the judge erred in ruling that the defendant's prior conviction would have been admissible had he testified; and (5) the fresh complaint testimony of Alice's mother and Detective Kerr exceeded the bounds of the fresh complaint doctrine and violated the defendant's right to confrontation.

1. *"Void" indictment.* The defendant claims that the indictment charging rape of a child by force was defective because it did not allege penetration. We disagree. While our case law has required the Commonwealth to prove some degree of penetration in order to support a conviction under the statute, see, e.g.,

*Commonwealth* v. *Lopez*, 433 Mass. 722, 726-727 (2001), an allegation of penetration is not required in an indictment for rape of a child by force where it is not expressly mentioned in the statute. The indictment expressly references the crime of rape of a child by force and properly tracks the statutory definition of the crime.[2] See G. L. c. 265, § 22A.[3] See also G. L. c. 277, §§ 34, 79; *Commonwealth* v. *Baron*, 356 Mass. 362, 364 (1969) ("An indictment conforming with the statutory form is sufficient"). The defendant was given adequate notice of the nature of the charges against him and thus the indictment was sufficient.[4] See *Commonwealth* v. *Farmer*, 218 Mass. 507, 509 (1914) ("The Constitution of Massachusetts, article 12 of the Declaration of Rights, requires only such particularity of allegation as may be of service to a person charged with crime in enabling him to understand the charge and prepare his defense"). Cf. *Commonwealth* v. *King*, 387 Mass. 464, 467-468 (1982) (time of rape of child need not be precisely alleged).

2. *Sufficiency of the evidence.* The defendant claims that the evidence at trial was similarly insufficient on the element of penetration, and that the judge should have granted his motion for a required finding of not guilty. This claim also fails. As a matter of law, evidence that a male forced a female to perform fellatio on him and made her "lick" his penis is sufficient to support a jury's finding of penetration and thus a conviction of forcible rape of a child.[5]

While some degree of penetration is required to sustain a

---

[2]The indictment reads, in part, that the defendant "did unlawfully have sexual intercourse or unnatural sexual intercourse with . . . a child under sixteen years of age, and compelled said [child] to submit by force and against her will, or compelled said [child] to submit by threat of bodily injury."

[3]General Laws c. 265, § 22A, reads, in pertinent part:

"Whoever has sexual intercourse or unnatural sexual intercourse with a child under sixteen, and compels said child to submit by force and against his will or compels said child to submit by threat of bodily injury, shall be punished . . . ."

[4]Because we find the defendant's indictment for rape sufficient, we need not consider his argument that all subsequent proceedings taken in reliance on the indictment are "void."

[5]The defendant points to a range of sources in search of a definition of rape conducive to his case, including Shakespeare and "Webster's." We believe our existing case law provides sufficient guidance to resolve the case at hand.

conviction under the statute, a jury may infer penetration on the basis of licking a penis. Cf. *Commonwealth* v. *Donlan*, 436 Mass. 329, 336 (2002) ("element of penetration required for a rape conviction established by evidence that [the defendant] touched or came into contact with victim's vagina, vulva, or labia"); *Commonwealth* v. *Gichel*, 48 Mass. App. Ct. 206, 213 (1999) ("intrusion into the vagina is not required to prove penetration; just a touching of the vulva or labia is sufficient" under child rape statute); *Commonwealth* v. *Lender*, 47 Mass. App. Ct. 164, 167 (1999); *Commonwealth* v. *Moniz*, 43 Mass. App. Ct. 913, 914 (1997); *Commonwealth* v. *Edward*, 34 Mass. App. Ct. 521, 523 (1993). This court has recognized that a perpetrator commits "unnatural sexual intercourse" with a child by forcing the child to perform fellatio, see *Commonwealth* v. *Gallant*, 373 Mass. 577, 579, 584-585 (1977) (defendant penetrated victim's mouth with penis).

In denying the defendant's motion for a required finding of not guilty, the judge properly concluded that the element of penetration required for a rape conviction may be established by licking a penis because "there is no difference between the licking of the female genitalia and the male genitalia. The bodily invasion is the same, regardless of the sex of the victim." Cf. *Commonwealth* v. *Gallant, supra* at 583 (rape statute "is neutral as to the gender of the victim . . . [and therefore] the penalties for 'sexual intercourse' and 'unnatural sexual intercourse' are the same without regard to the gender of the victim"). Other courts have similarly concluded that forcing a victim to lick or kiss a penis may support a conviction of rape or sexual assault.[6]

The judge properly instructed the jury on the definition of

[6]See, e.g., *Murray* v. *State*, 770 P.2d 1131, 1139 (Alaska Ct. App. 1989); *Hennington* v. *State*, 702 So. 2d 403, 408 (Miss. 1997); *Maes* v. *Sheriff, Clark County*, 94 Nev. 715, 716 (1978); *State* v. *Melcher*, 140 N.H. 823, 825-826 (1996); *Interest of S.M.*, 284 N.J. Super. 611, 617-619 (1995); *Matter of Heil*, 145 N.C. App. 24, 29-30 (2001); *State* v. *Long*, 64 Ohio App. 3d 615, 618 (1989); *Commonwealth* v. *L.N.*, 787 A.2d 1064, 1070 (Pa. Super. Ct. 2001); *State* v. *Childs*, 146 Wis. 2d 116, 119-120 (Ct. App. 1988). Contrast *State* v. *Scott*, 256 Conn. 517, 530 (2001); *People* v. *Johnson*, 432 Mich. 931, 931 (1989), rev'g 164 Mich. App. 634 (1987). Cf. *Thomas* v. *State*, 301 Md. 294, 320-321 (Ct. App. 1984) (term "fellatio" in first degree sexual offense statute does not require penetration, only "some contact" between mouth and male organ).

forcible rape of a child under sixteen years, including the requirement that there be some degree of penetration.[7] When viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the evidence supported a finding of rape, including some amount of penetration. The victim's testimony that she licked the defendant's penis, did not like the taste, placed toothpaste on the penis and then licked the toothpaste off was sufficient evidence from which the jury could infer some degree of penetration. Cf. *Commonwealth* v. *Moniz*, *supra* at 914 (jury could find penetration from seven year old victim's testimony that defendant "licked her pee pee"); *Commonwealth* v. *Nylander*, 26 Mass. App. Ct. 784, 785-787 (1989) (jury could infer penetration from evidence including testimony of young child that defendant touched her "bum" and "private spot" with his "private spot"); *Commonwealth* v. *Thomas*, 19 Mass. App. Ct. 1, 5 (1984) (jury entitled to infer penetration from six year old's testimony that defendant made her "privacy" feel bad by lying on top of her); *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 17-18 (1980) (sufficient evidence of "unnatural sexual intercourse" where adult victim testified that defendant "put his mouth to — to my vagina," and "put his mouth down below"). We do not eliminate the requirement of penetration, as defined in our cases, but recognize that when young children testify about sexual assault, their description of penetration need not be precise. "We do not require victims to describe with scientific accuracy parts of their anatomy or for children to possess vocabulary and habits of precision that many adults do not command." *Commonwealth* v. *Moniz*, *supra* at 914.[8]

Finally, on the issue of penetration, the defendant argues in essence that because the statute does not define the penetration

[7]He instructed: "Unnatural sexual intercourse includes oral sex, or fellatio. Oral sexual intercourse, or fellatio, is complete upon penetration, no matter how slight, of an alleged victim's mouth with the male penis. Thus, on the first element, the Commonwealth must prove that the defendant's penis penetrated the complaining witness's mouth, no matter how slightly."

[8]We reject the defendant's invitation to ignore the weight of this case law on the grounds that criminal statutes are to be strictly construed against the Commonwealth. See *Commonwealth* v. *Rahim*, 441 Mass. 273, 284 n.19 (2004).

element of rape of a child, the statute did not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." We take this as a suggestion that the forcible rape of a child statute, G. L. c. 265, § 22A, is unconstitutionally vague. We have previously rejected a similar argument, and reject the defendant's contention today. See *Commonwealth* v. *Gallant, supra* at 590 (rejecting argument that G. L. c. 265, § 23, is unconstitutionally vague because "unnatural sexual intercourse" includes fellatio, reasoning "defendant had clear notice that compelling fellatio by a child was a criminal act"). Our rape statute is not so vague in its prohibition of "unnatural sexual intercourse" that any adult would be unaware that the act of forcing a four year old child to perform fellatio is proscribed by the statute.

3. *Duplicative charges.* The defendant also raises, apparently for the first time, the contention that his convictions were based on facts "so closely related as to constitute the substance of but a single crime" and thus barred by "double jeopardy." In essence, he asserts that these convictions were duplicative. Because there was no objection at trial, we review the claim only to determine if there was error and, if so, then "determine if a substantial risk of a miscarriage of justice occurred." *Commonwealth* v. *Mamay,* 407 Mass. 412, 418 (1990), citing *Commonwealth* v. *Thomas,* 401 Mass. 109, 119 (1987).

"[I]ndecent assault and battery [of a child] is a lesser included offense of forcible rape [of a child under sixteen years]." *Commonwealth* v. *Sanchez,* 405 Mass. 369, 381 (1989), quoting *Commonwealth* v. *Egerton,* 396 Mass. 499, 503 n.3 (1986). See *Commonwealth* v. *Walker,* 426 Mass. 301, 303 (1997). Thus, convictions for both offenses must rest on separate and distinct acts. *Commonwealth* v. *Mamay, supra. Commonwealth* v. *Thomas, supra* at 120. See *Commonwealth* v. *Johnston,* 60 Mass. App. Ct. 13, 22 (2003). The acts that support the two convictions cannot be "so closely related in fact as to constitute in substance but a single crime." *Commonwealth* v. *Thomas, supra,* quoting *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 662-663 (1979). Here, the Commonwealth argued two separate acts supported the convictions: the rape charge was based on the forced licking of the defendant's penis, and the assault and bat-

tery was based on the wholly separate act of the scratching of the defendant's penis.

The judge carefully and properly instructed the jury that the indictment for indecent assault and battery "refers to the defendant allegedly causing [Alice] to scratch his penis, as opposed to the alleged licking of his penis." He further instructed: "This is charged as a separate and distinct offense [from the rape]. It's not part of the [rape] indictment that I explained to you. It requires proof of a separate act and it is alleged by the Commonwealth that that separate act is the scratching by [Alice] of the defendant's penis . . . ." The defendant did not object to this instruction, and the jury were given separate verdict slips. In these circumstances, whether the scratching and licking "were separate and distinct acts or part of a single criminal episode was a question of fact for the jury to resolve." *Commonwealth* v. *Maldonado*, 429 Mass. 502, 509 (1999) (judge properly instructed jury that assault and battery by means of dangerous weapon and murder convictions must rest on separate and distinct acts). We assume the jury followed the judge's proper instructions and based the two convictions on these separate acts. *Id.* at 510. See *Commonwealth* v. *Mamay*, *supra* at 418-419 (defendant's inserting tongue into victim's mouth and tearing down pants distinct from anal and vaginal penetration); *Commonwealth* v. *Johnston*, *supra* at 22-23 (pulling victim's hair and raping her distinct acts); *Commonwealth* v. *Kopsala*, 58 Mass. App. Ct. 387, 393 (2003) (evidence that defendant "pulled up the victim's shirt, exposing her breasts, unbuttoned her jeans and pulled them off, and removed her panties," separate and distinct from penetration); *Commonwealth* v. *Fitzpatrick*, 14 Mass. App. Ct. 1001, 1003 (1982) ("An indecent contact which is separate from and not incidental to the act of penetration does not merge with the crime of rape to constitute but a single offense any more than a second penetration of the same victim during the same criminal episode constitutes but one rape"). Contrast *Commonwealth* v. *Sanchez*, *supra* at 381-382 (judge did not instruct jury that convictions must be based on separate acts). There was no error.

4. *Evidence of prior conviction.* Next, the defendant claims

that the judge erred in ruling that his prior conviction of armed robbery would be admissible for impeachment purposes if the defendant testified.[9] Trial judges have discretion to permit impeachment of defendants who testify on their own behalf with their prior convictions, pursuant to G. L. c. 233, § 21.[10] See *Commonwealth* v. *Eugene*, 438 Mass. 343, 352 (2003); *Commonwealth* v. *Boyd*, 367 Mass. 169, 174 (1975); *Commonwealth* v. *Subilosky*, 352 Mass. 153, 167 (1967). Here, the defendant was released from his State prison sentence on the armed robbery conviction within ten years of its admission at trial, see G. L. c. 233, § 21, the Commonwealth offered a certified copy of the conviction, see *Commonwealth* v. *Atkins*, 386 Mass. 593, 600 (1982), and the defendant was represented by counsel in the armed robbery case. Cf. *Commonwealth* v. *Saunders*, 435 Mass. 691, 695-696 (2002). Moreover, the armed robbery conviction, while relevant to the issue of the defendant's credibility, is sufficiently dissimilar from the sexual offenses at issue here. See *Commonwealth* v. *Weaver*, 400 Mass. 612, 618-619 (1987) (prior convictions admissible in judge's discretion if sufficiently dissimilar from crime charged); *Commonwealth* v. *Chase*, 372 Mass. 736, 750 (1977) (judge could properly exclude prior conviction where crime charged and prior crime are similar, and prior crime does not bear directly on disposition to tell truth). Thus, the risk of prejudice to the defendant by admitting the prior conviction would likely not have outweighed the probative value of the evidence for impeachment purposes. The judge properly exercised his discretion to permit impeachment of the defendant with the conviction in accordance with the requirements of the statute.[11] That the defendant chose not to testify due to the potential admission of this conviction is not

---

[9]"We assume, without deciding, that . . . a defendant need not testify to preserve for review a claim that a motion to exclude impeachment evidence of a prior conviction was improperly denied." *Commonwealth* v. *Feroli*, 407 Mass. 405, 407-408 (1990), citing *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 854 (1988).

[10]In pertinent part, G. L. c. 233, § 21, reads: "The conviction of a witness of a crime may be shown to affect his credibility, except as follows: . . . The record of his conviction of a felony upon which a state prison sentence was imposed shall not be shown for such purpose after ten years from the date of expiration of the minimum term of imprisonment imposed by the court . . . ."

[11]The defendant claims the judge was "unaware of his discretion." The

cause for reversal. See *id.* at 749-751 (rejecting similar argument).

5. *Admission of "fresh complaint" testimony.* The defendant next asserts that the rape conviction was secured by the use of "fresh complaint" testimony (from Alice's mother and Detective Kerr) that went beyond the limits of the then applicable fresh complaint doctrine, and violated his confrontation rights. We begin with a brief overview of the origins of the fresh complaint doctrine and a summary of the doctrine as it is currently applied in Massachusetts courts. We next address each of the defendant's objections to the fresh complaint testimony admitted at trial, considering whether the testimony violated the doctrine as it existed at the time of trial. We then conclude that there was no error in the admission of the testimony under then-existing evidentiary standards or under our Federal and State confrontation clauses.

a. *Origins and scope of doctrine.* Under English common law, victims of violent crime were required to make "hue and cry" (hutesium et clamor) as a prerequisite of prosecution. See, e.g., *Commonwealth* v. *Bailey*, 370 Mass. 388, 394 n.7 (1976); 2 F. Pollock & F. Maitland, The History of English Law Before the Time of Edward I 578-579 (2d ed. 1899). By the 1700's, when courts had refined many evidentiary standards, the "hue and cry" requirement was no longer a necessary part of a criminal prosecution, except in rape cases. See, e.g., *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646-647 n.7 (1991); Anderson, The Legacy of the Prompt Complaint Requirement, Corroboration Requirement, and Cautionary Instructions on Campus Sexual Assault, 84 B.U. L. Rev. 945, 955 (2004) (hereinafter Anderson, The Legacy of the Prompt Complaint Requirement). The rationale for the different treatment of rape cases was the then current belief that "after becoming a victim of [sexual] assault against her will . . . [the victim] should have spoken out. That she did not, that she went about as if nothing had happened, was in effect an assertion that noth-

---

transcript proves otherwise. The judge noted, "I recognize I have discretion. In this case it seems to me I should exercise it in favor of letting the government use [the prior conviction] to impeach the defendant if he takes the stand."

ing violent had been done." *Id.* at 978 & n.198, quoting 4 J. Wigmore, Evidence § 1135 (3d ed. 1940).

American courts, in turn, endorsed the belief that the failure of a rape victim to make a prompt complaint of a sexual assault was akin to an inconsistent statement at odds with the complainant's court room testimony about the rape. *Commonwealth* v. *Lavalley, supra,* citing 4 J. Wigmore, Evidence § 1135, at 298-300 (Chadbourn rev. ed. 1972). Because of this belief, the prosecution was permitted to rebut any inference that the sexual assault charge was fabricated with evidence from "fresh complaint" witnesses to the effect that the complainant did in fact complain and the complaint was "fresh" or prompt.[12] *Id.* Hence, "fresh complaint" evidence was admitted in sexual assault trials as an exception to the usual rule that a prior statement of a witness that is merely repetitive of the witness's trial testimony is not admissible except in limited circumstances, such as on redirect examination to rehabilitate the witness after impeachment on a claim of recent contrivance. *Commonwealth* v. *Bailey, supra* at 391-392 & n.3. See *Commonwealth* v. *Peters,* 429 Mass. 22, 27 n.6 (1999).

In more recent years, we have acknowledged the "sexist," "outmoded" and "invalid" origins of the fresh complaint rule, see *Commonwealth* v. *Licata,* 412 Mass. 654, 658 (1992); *Commonwealth* v. *Lavalley, supra* at 646 n.7; but nevertheless continued to adhere to the fresh complaint doctrine:

> " 'Whatever may have been the historical origin of the fresh complaint doctrine, it should now be seen in relation to the common observation . . . that juries tend toward considerable and perhaps inordinate skepticism in rape cases, above all where there is a suggestion of willingness or acquiescence on the part of the victim' . . . . We cannot ignore the societal tendency to disbelieve sexual assault victims and to presume that a rape victim will make a prompt complaint."

*Commonwealth* v. *Licata, supra,* quoting *Commonwealth* v.

---

[12]The history and rationale of the fresh complaint doctrine is not unique to Massachusetts. See, e.g., *People* v. *Brown,* 8 Cal. 4th 746, 755-756 (1994); *State* v. *Troupe,* 237 Conn. 284, 294-298 (1996); *State* v. *Hill,* 121 N.J. 150, 161-162 (1990); *State* v. *Kendricks,* 891 S.W.2d 597, 600-601 (Tenn. 1994).

*Bailey, supra* at 394. See *Commonwealth* v. *Quincy Q.*, 434
Mass. 859, 868-869 (2001). Thus, at the foundation of our
contemporary fresh complaint doctrine lie three concerns about
potential juror bias: that jurors may still believe that a rape
victim will promptly disclose a sexual assault to someone; that
jurors may draw adverse inferences from the absence of
evidence suggesting such a prompt complaint; and that jurors
continue to be skeptical of allegations of rape. We have therefore
permitted fresh complaint testimony for the limited purpose of
corroborating the victim's testimony, but the testimony is "cor-
roborative only if it shows that the victim seasonably complained
of the attack." *Commonwealth* v. *Licata, supra* at 657, 660.

The admission of fresh complaint evidence concerning sexual
assaults on children stands on a somewhat different footing.
"The cases involving child sexual abuse constitute a factually
distinct branch of the fresh complaint doctrine that gives special
consideration to the natural fear, ignorance, and susceptibility to
intimidation that is unique to a young child's make-up." *Com-
monwealth* v. *Fleury*, 417 Mass. 810, 814 (1994), quoting *Com-
monwealth* v. *Amirault*, 404 Mass. 221, 229 (1989). "[W]ith
regard to child victims, our fresh complaint jurisprudence has
adopted the [theory that] a child's circumstances commonly
make it difficult, if not impossible, for the child to make a
prompt complaint of sexual assault and, contrary to the theoreti-
cal justification for the doctrine, a child's much later report of
sexual assault is admitted as 'fresh complaint' whenever there is
a reasonable explanation for the child's failure to make a prompt
complaint." *Commonwealth* v. *Montanez*, 439 Mass. 441, 453-
454 (2003) (Sosman, J., concurring), citing *Commonwealth* v.
*Fleury, supra* at 813-815, and cases cited.

Most recently, in *Commonwealth* v. *Montanez, supra* at 445,
we summarized the key provisions of our fresh complaint
doctrine:

> "[O]ur fresh complaint doctrine 'permits an out-of-
> court complaint seasonably made by the complainant in a
> sexual assault case to be admitted as part of the prosecu-
> tion's case-in-chief. Evidence of the fact of the complaint
> is admissible only to corroborate the complainant's
> testimony [and not] . . . to establish the truth of the

complaint itself . . . fresh complaint witness may testify both to the fact of the complaint and the details of the complaint as expressed by the complainant' . . . . 'While a complainant may testify about the fact that she made a complaint to another about a sexual assault, the person complained to, the fresh complaint witness, must be produced to testify about what the complainant said and to be available for cross-examination.' . . . Finally, pursuant to our rule, the admissibility of the fact of the complaint is not dependent on an attack on the credibility of the complainant."

*Id.* at 445, quoting *Commonwealth* v. *Peters*, 429 Mass. 22, 27, 28 (1999). Thus, under the doctrine as it has existed previously, a *complainant* was permitted to testify only to the fact that a fresh complaint was made and to whom it was made,[13] *Commonwealth* v. *Peters, supra* at 30, while a fresh complaint witness was permitted to testify to details of the complaint, provided those details did not exceed the scope of the complainant's testimony about the incident. See *Commonwealth* v. *Flebotte*, 417 Mass. 348, 351 (1994); *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992), citing *Commonwealth* v. *Bailey, supra* at 396. A judge could, of course, exercise judicial discretion to exclude needless or repetitious details of the alleged assault, as was done in this case.[14] See *Commonwealth* v. *Licata, supra* at 660, quoting *Commonwealth* v. *Bailey, supra* at 397.

Significantly, testimony concerning the circumstances giving rise to the fresh complaint (as opposed to what the complainant actually said in the fresh complaint), although sometimes admissible on other grounds, was generally not admissible as part of

---

[13]A complainant could also testify on redirect examination to the details of the complaint if defense counsel cross-examined the complainant on them. *Commonwealth* v. *Peters*, 429 Mass. 22, 30 (1999).

[14]In contrast to our fresh complaint doctrine, the majority rule, adhered to by virtually all other jurisdictions, is that "when the complainant has not been impeached and when the complaint is not a spontaneous utterance . . . only the fact of the complaint is admissible during the prosecution's case-in-chief." *Commonwealth* v. *Licata*, 412 Mass. 654, 657 n.7 (1992). Currently, Minnesota is the only State that adheres to the Massachusetts rule of allowing fresh complaint witnesses to testify both to the fact of the complaint and its details before the complainant's credibility is attacked. See *Commonwealth* v. *Montanez*, 439 Mass. 441, 445-446 n.5 (2003); *State* v. *Blohm*, 281 N.W.2d 651, 652 (Minn. 1979).

the witness's fresh complaint testimony. See *Commonwealth* v. *Montanez, supra* at 450 (testimony regarding victim's appearance at time of complaint admissible as state-of-mind evidence not fresh complaint); *Commonwealth* v. *Scanlon, supra* at 671 (witness's testimony concerning victim's demeanor based on witness's own observations admissible but not as fresh complaint testimony); *Commonwealth* v. *Fales,* 60 Mass. App. Ct. 102, 105-107 (2003) (prosecutors permitted to question witnesses regarding time frame and manner of victim's disclosures where circumstances of complaint first developed in cross-examination; testimony admissible as relevant to victim's state of mind, not as "fresh complaint" testimony). Contrast *Commonwealth* v. *Quincy Q., supra* at 874-875 (testimony that complainant "clammed up" when discussing alleged assault improper interpretation of complainant's words and inconsistent with corroborative purpose of fresh complaint testimony). Judges were encouraged to restrict the number of fresh complaint witnesses to avoid the risk of "piling on." See *Commonwealth* v. *Licata, supra* at 659-660, citing *Commonwealth* v. *Lavalley, supra* at 646.

Witnesses were permitted to testify only to reasonably prompt ("fresh") complaints. Contrast *Commonwealth* v. *Montanino,* 409 Mass. 500, 508-509 (1991) (four-year delay too long). Greater flexibility in determining freshness was permitted in cases of child sexual assault. The "preliminary decision whether a complaint [was] sufficiently fresh to be presented to the jury [lay] in the sound discretion of the trial judge and [was to] be made according to whether the complaint was 'reasonably prompt' in the particular circumstances of the case." *Id.* at 508, quoting *Commonwealth* v. *Sherry,* 386 Mass. 682, 691 (1982). As with all evidence, whether to believe or disbelieve the fresh complaint testimony, and what, if any, weight to give that evidence, rested with the jury. Thus, while the preliminary determination of "freshness" was made by the judge, once the fresh complaint testimony was admitted in evidence, "the ultimate responsibility for determining the freshness of the complaint [lay] with the jury." *Commonwealth* v. *Montanino, supra* at 510.

b. *"Freshness" of the complaint.* The defendant first chal-

lenges the admission of the fresh complaint testimony on the ground that the complaints were not promptly made. Alice testified that her first complaint (made to her mother on February 18, 2002) occurred between one day and one week after the alleged sexual assault. The complaint to Detective Kerr was made only one day later. Certainly a judge would have been correct in admitting testimony about a complaint made roughly one week after an alleged sexual assault. See *Commonwealth* v. *Dockham*, 405 Mass. 618, 626 (1989) (complaint fresh where four-year old victim made first complaint "eleven days after he left the abusive setting"). The indictment, however, alleges the assault took place between June, 2000, to February 12, 2002. See *Commonwealth* v. *Montanino*, *supra* at 512, quoting *Commonwealth* v. *King*, 387 Mass. 464, 467 (1982) ("The time of the offense is not an element of [the crime of rape of a child] and need not be precisely alleged"). Given the divers dates alleged in the indictment, the complaint by Alice to her mother could have been made anytime from six days to twenty months after the alleged assault. Even if the complaint arose twenty months after the alleged crime, in the circumstances of this case, the judge properly admitted it based on a preliminary determination that it was reasonably prompt. As indicated, our courts have been flexible with respect to the promptness requirement in cases of child sexual assault. See, e.g., *Commonwealth* v. *Fleury*, *supra* at 813-815 (twenty-one month delay in child sexual assault case); *Commonwealth* v. *McKinnon*, 35 Mass. App. Ct. 398, 400, 403 (1993) (thirty-four month delay in child sexual assault case). See also *Commonwealth* v. *Kirouac*, 405 Mass. 557, 564-565 (1989). In this case, the judge properly instructed the jury that for them to consider the testimony of Alice's mother and Detective Kerr as corroborative of Alice's testimony, they must also find that Alice's complaints to her mother and Detective Kerr were "reasonably prompt." Factors that could have supported the jury's finding of promptness include Alice's tender age, the fact that the defendant is her biological father, that the defendant was in a position of authority and trust with respect to Alice, and that the defendant played a supervisory role in Alice's life. See *Commonwealth* v. *Fleury*, *supra* at 814-815. See also *Commonwealth* v. *Dockham*, *supra* at 626 (listing some relevant fac-

tors); *Commonwealth* v. *Kruah*, 47 Mass. App. Ct. 341, 346 (1999) (same).

c. *Enlarging scope of Alice's testimony.* The defendant also contends that the admission of the fresh complaint evidence violated his right to a fair trial because the mother's testimony improperly enlarged on Alice's testimony, providing substantive evidence of the alleged crime including the date of the offense. As a logical outgrowth of the rule that fresh complaint testimony is to be used for corroborative purposes only, such testimony may not include details of the alleged assault not included in the complainant's own testimony. See, e.g., *Commonwealth* v. *Flebotte*, *supra* at 351; *Commonwealth* v. *Scanlon*, *supra* at 670. To the extent that the fresh complaint testimony significantly enlarges the scope of the facts of the alleged assault as described in the complainant's testimony, it cannot be said either to support or to refute the complaining witness's own testimony.

In this case, we conclude that the fresh complaint testimony of Alice's mother did not impermissibly exceed the scope of Alice's own testimony. First, contrary to the defendant's arguments, the mother did not testify to the date of the sexual assault, but only to the date on which her daughter disclosed the abuse to her. The mother's testimony about the timing of Alice's complaint and Alice's visits with the defendant was permissible; it did not attempt to explain away Alice's delay in complaining, even if that evidence assisted the Commonwealth in establishing the dates of the alleged offense and the first complaint. Second, Alice's mother testified only briefly as to Alice's fresh complaint, providing few details of the complaint.[15] Testimony concerning further details of the fresh complaint was limited by the judge. Moreover, the judge properly instructed the jury that "fresh complaint testimony may not be used to fill in any gaps in the alleged victim's testimony. So if the fresh

---

[15]She testified that, on February 18, 2002, at approximately 8:45 A.M., while getting the victim ready for the defendant to pick her up, "My daughter looked at me and very matter of factly . . . said, 'Mommy, Daddy had an itch on his pee pee, so he wanted me to lick it.' . . . I said 'Oh, my God,' you know. And I looked at her and I said, 'Are you sure? Did that really happen?' And she said, 'Yeah.' And I said, 'Well, what else happened? Did anything else happen?' And she said, 'Yeah.' "

complaint testimony adds any alleged facts to [the victim's] testimony, then you should disregard that."

The defendant suggests that the fresh complaint testimony of both Alice's mother and Detective Kerr was so inconsistent with the victim's own testimony that the allegation of rape cannot be believed. Fresh complaint testimony need not replicate precisely the victim's own testimony, nor must it be sanitized to match the victim's testimony exactly. See *Commonwealth* v. *Scanlon, supra* at 670. Some inconsistency between a fresh complaint witness's testimony and a complainant's testimony is expected, and will often aid the jury in determining whether the fresh complaint testimony ultimately supports the complainant's story. To the extent that there were inconsistencies between the testimony of the two adults and the testimony of the child, they were insignificant. The weight and credibility of the witnesses' testimony are solely for the fact finder and are not proper subjects for appeal. Cf. *Commonwealth* v. *Lydon*, 413 Mass. 309, 311 (1992).

d. *"Piling on" of fresh complaint witnesses.* Next, the defendant maintains that the admission of testimony from two fresh complaint witnesses constituted prejudicial repetition of the details of the assault. We disagree. While the Commonwealth called two fresh complaint witnesses to testify, the judge carefully limited the mother's testimony to avoid duplication concerning the details of the complaint. While attentive to the potential dangers of the prejudicial "piling on" of fresh complaint testimony, see *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 761 (1995); *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646 (1991), our courts have permitted two or more fresh complaint witnesses to testify concerning the details of the complaint. See, e.g., *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 444 (1996) (five fresh complaint witnesses); *Commonwealth* v. *Licata*, 412 Mass. 654, 656 n.4, 660 (1992) (two fresh complaint witnesses); *Commonwealth* v. *Lavalley, supra* at 642 (five fresh complaint witnesses and videotape of victim's complaint to police not prejudicial); *Commonwealth* v. *Brouillard*, 40 Mass. App. Ct. 448, 457 n.15 (1996) (four witnesses in case involving two complainants and two defendants "not in itself impermissible"). Contrast *Commonwealth* v. *Swain*, 36

Mass. App. Ct. 433, 442 (1994) (six witnesses prejudicial). There was no error in permitting two fresh complaint witnesses, especially where the testimony of the two was minimally cumulative.

e. *Confrontation clause.* Finally, the defendant argues that the confrontation clauses of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights bar the fresh complaint testimony admitted in this case. In *Crawford* v. *Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that where a witness testifies at trial and the defendant has the opportunity to cross-examine the witness, the confrontation clause is not violated by the admission of an out-of-court statement by that witness. See *id.* at 59 n.9 ("we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it"). See also *State* v. *Samuels*, 273 Conn. 541, 568-569 (2005) ("constancy of accusation" [Connecticut's term for fresh complaint evidence] testimony does not violate confrontation clause). Article 12 of the Massachusetts Declaration of Rights affords no greater protection than the Sixth Amendment in this context. Cf. *Commonwealth* v. *Edwards*, 444 Mass. 526 (2005). Here, the defendant had the opportunity to and did cross-examine Alice, inquiring about her complaint to her mother, her memory, and her failure to report the alleged incident to her grandparents or teachers.

The defendant also contends that Alice was essentially unavailable for cross-examination because she was incompetent to testify. We disagree. First, Alice was judged competent after a hearing on the issue, and the defendant does not now challenge that determination. Second, we see nothing in Alice's testimony to support any claim that she was "unavailable" due to any inability or unwillingness to testify. Alice testified to the details of the assault, her report to her mother, and the relative timing of the assault. As noted above, she was cross-examined on issues relative to the alleged assault and her complaint, and responded to the best of her ability. To the extent her memory

was hazy on certain details, this is something for the jury to consider when assessing her credibility. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 234-235 (1989) (no confrontation clause violation where child sexual assault complainant exhibited "lapse of memory" on cross-examination). Contrast *Commonwealth* v. *Kirouac*, 405 Mass. 557, 560-563 (1989) (confrontation clause violation where child complainant only reluctantly testified on direct and exhibited "total refusal to cooperate on cross-examination").

6. *Reexamination of the fresh complaint doctrine.* This case must be resolved on the basis of the "fresh complaint" doctrine as it existed at the time of trial. We are, however, provided with an opportunity to reconsider the scope and continued necessity for that doctrine.[16] We have considered the history of the doctrine, its development and application during the past years, as well as the continued relevance of the theories that have supported its vitality. We conclude that the doctrine requires modification. The "first complaint" rule we announce today, broader in some respects than the prior rule and narrower in others, reflects a contemporary understanding of information that will permit jurors to make a fair assessment of a sexual assault complainant's credibility.

a. *Continued need for complaint witnesses.* We last reviewed the validity of our "fresh complaint" doctrine in *Commonwealth* v. *Licata*, *supra* at 657-660. Since that time, further research has been conducted on the behavior of victims of sexual assault in the aftermath of the crime. That research suggests that, in part because the harm suffered by sexual assault victims often consists of the psychological harm caused by the defendants' violation of a victim's body, such victims respond in a variety of ways to the trauma of the crime,[17] and often do not promptly report or disclose the crime for a range of reasons, including

[16]We solicited and received numerous amicus briefs on whether to modify or eliminate the fresh complaint doctrine. Some features of our fresh complaint doctrine that we reconsider today were not directly implicated by the facts of this case, but were briefed.

[17]See, e.g., Stanchi, The Paradox of the Fresh Complaint Rule, 37 B.C. L. Rev. 441, 459-460 (1996).

shame, fear, or concern they will not be believed.[18] See, e.g., *People* v. *Brown*, 8 Cal. 4th 746, 759 (1994) ("The overwhelming body of current empirical studies, data, and other information establishes that it is not inherently 'natural' for the victim to confide in someone or to disclose, immediately following commission of the offense, that he or she was sexually assaulted").

Also since 1992, residents in Massachusetts have been exposed to significant amounts of public information and media attention on the issue of sexual assaults and its impact on victims, especially children. See, e.g., *Ross* v. *Garabedian*, 433 Mass. 360, 369-370 (2001) (Sosman, J., dissenting) (collecting sources, including after 1992). Though we have located little recent research on juror perceptions of rape complainants, the research and scholarship of which we are aware suggests that damaging stereotypes persist. Some jurors may continue to believe incorrectly that "real" victims will *promptly* disclose a sexual attack.[19] Some jurors may continue to harbor prejudicial misperceptions about the nature of rape and rape allegations,

---

[18]See, e.g., United States Department of Justice, Rape and Sexual Assault: Reporting to Police and Medical Attention, 1992-2000 at 1 (2002) (only thirty-six per cent of rapes and twenty-six per cent of sexual assaults reported to police nationwide between 1992 and 2000); Massachusetts Department of Public Health, Sexual Assault in Massachusetts 1988-1997 at 10, 12 (1999) (in 1997, thirty-five per cent of rape victims delayed reporting crime to rape crisis center for over one year; common reasons given for delayed reporting included denial, shame, and fear of others learning about assault; shame or embarrassment most common reasons for not reporting assault from 1988 through 1996). See also Seidman, The Second Wave: An Agenda for the Next Thirty Years of Rape Law Reform, 38 Suffolk U. L. Rev. 467, 472 (2005) ("rape is the least reported, least indicted, and least convicted non-property felony in America"); Anderson, The Legacy of the Prompt Complaint Requirement, Corroboration Requirement, and Cautionary Instructions on Campus Sexual Assault, 84 B.U. L. Rev. 945, 978-979 (2004) (citing data to support claim that "most women who are raped . . . do not promptly complain"); D.E.H. Russell & R.M. Bolen, The Epidemic of Rape and Child Sexual Abuse in the United States 123-125 (2000) (most rapes never reported); Bryden, Rape in the Criminal Justice System, 87 J. Crim. L. & Criminology 1194, 1220-1223, 1228-1229 (1997) (scholars agree rape is "seriously underreported"; some reasons advanced for victims' failure to report include upset, embarrassment, shame, not wanting others to know, fear of retaliation); Stanchi, *supra* at 459-460 (delays reporting rape by child and adult victims correlated with socio-cultural and psychological factors other than veracity).

[19]See, e.g., Seidman, *supra* at 469 ("Jurors still expect evidence of fresh

including that complainants who wear revealing clothing, consume drugs or alcohol, or have unorthodox or promiscuous lifestyles cannot be "real" victims of rape; that forced sex by a spouse or a past partner does not constitute "real" rape; and that false accusations of sexual assault are more frequent than those of other violent crimes.[20] Juror biases may be particularly

complaints by victims with accompanying hysteria and torn clothes . . ."); A.E. Taslitz, Rape and the Culture of the Courtroom 19-25 (1999) (discussing culture of silence that results in expectation that "real" rape victims will speak "promptly and loudly"); Stanchi, *supra* at 458-464 (explaining perseverance of so-called "timing myth" that victims who do not promptly report rape are lying about assault in face of empirical data establishing that victims often do not report sexual assaults for variety of reasons).

[20]See, e.g., Seidman, *supra* at 468-469 (expressing view that "vast majority of people — including law enforcement personnel, judges and potential jurors — remain conflicted about what constitutes 'consensual' sex [and thus victims] continue to encounter the same hurdles that they did thirty years ago"); Anderson, The Legacy of the Prompt Complaint Requirement, *supra* at 1007-1010 (discussing popular misconceptions about nature of sexual assault in context of college campuses, including that rape is committed by strangers and that alcohol consumption is linked with sexual availability and tends to shift blame to victim); Anderson, From Chastity Requirements to Sexuality License, 70 Geo. Wash. L. Rev. 51, 104-108, 129-130 (2002) (summarizing research over past two decades suggesting that jurors are biased against complainants with prior history of sexual promiscuity, who frequent bars or parties with alcohol, and who have had prior sexual relationship with defendant); Koski, Jury Decisionmaking in Rape Trials: A Review & Empirical Assessment, 38 Crim. L. Bull. 21, 119-136 (2002) (empirical research on juries' decision-making behavior in rape cases revealed jurors "may rely on rape 'scripts' which they bring with them into the jury room" and "jury room [is] a complex context in which legal mandates [jury instructions] interact very explicitly with commonsense understandings of the world"); A.E. Taslitz, *supra* at 38-40 (citing recent data on university students revealing significant numbers agree "women frequently cry rape falsely [and] that rape is often provoked by the victim"; noting factors such as victim's appearance, alcohol consumption, sexual promiscuity, and careless behaviors contribute to perceived blameworthiness; concluding juries harbor persistent rape mythologies); Olsen-Fulero, Commonsense Rape Judgments: An Empathy-Complexity Theory of Rape Juror Story Making, 3 Psychol. Pub. Pol'y & L. 402, 418 (1997) (reviewing twenty-five years of research and empirical studies regarding juror decision-making in rape cases, and concluding "our work and [the] recent work of others have supported the notion that jurors come to the rape judgment situation with preconceptions and attitudes that lead them to entertain particular stories about what may have happened . . . and that these stories are then used to arrive at a legal decision or verdict"); Bryden, *supra* at 1272 (reviewing decades of research on rape prosecutions and concluding most research supports "finding that acquaintance cases, especially those with

strong in child rape cases, as some may attribute allegations of sexual assault to the child's imagination or improper adult influence. And jurors may unfairly perceive child complainants as incredible. See, e.g., *Commonwealth* v. *Dockham,* 405 Mass. 618, 630 (1989), quoting *State* v. *Middleton,* 294 Or. 427, 440 (1983) (Roberts, J., concurring) ("the routine indicia of witness reliability — consistency, willingness to aid the prosecution, straightforward rendition of the facts — may, for good reason, be lacking [in child victims of sexual assault]. As a result jurors may impose standards of normalcy on child victim/witnesses who consistently respond in distinctly abnormal fashion"). Both adults and children may delay complaining about sexual assaults but then face claims of fabrication, and the reasons for the behavior of adult and child victims of sexual assault are still widely misunderstood. See, e.g., *Commonwealth* v. *Mamay,* 407 Mass. 412, 421-422 (1990) (rape trauma syndrome appropriate subject for expert testimony because beyond jury's common knowledge); *Commonwealth* v. *Dockham, supra* at 629-630 (expert testimony on child victims permissible because symptoms beyond common knowledge of jurors).

While more than a decade has passed since we last observed that "juries tend toward considerable and perhaps inordinate skepticism in rape cases," *Commonwealth* v. *Licata, supra* at 658, quoting *Commonwealth* v. *Bailey,* 370 Mass. 388, 394 (1976), that observation has continued vitality. Although many jurors may no longer harbor stereotypical assumptions concerning the behavior of "real" rape victims, others may still harbor stereotypical assumptions to the effect that victims will immediately disclose a sexual assault and that the absence of a timely complaint suggests fabrication of the assault. There is a continued need in sexual assault cases to counterbalance or address inaccurate assumptions regarding stereotypes about delayed reporting of a sexual assault or about sexual assault victims in general.

We reject any contention that the existing rules of evidence

nontraditional victims, are more difficult for the prosecution than stranger cases"). Contrast United States Department of Justice, First Response to Victims of Crime 2001 at 10 (2001) ("False accusations of sexual assault are estimated to occur at the low rate of 2 percent — similar to the rate of false accusations for other violent crimes").

provide an adequate remedy with which to combat these stereotypes. The spontaneous utterance exception, by way of example, would allow a complainant's statements to be admitted for substantive purposes,[21] but only in the narrow instance where the statement was made in reaction to a startling event (the sexual assault), without any opportunity for reflective thought. See *Commonwealth* v. *Santiago*, 437 Mass. 620, 623-625 (2002).[22] And corroborative evidence is less likely to be necessary in cases where victims make such "spontaneous" complaints, as they are the victims who would meet the stereotypical expectation of an immediate complaint. Likewise, prior consistent statements by victims are admissible only to rebut claims of recent contrivance by a complainant, and only if the statements were made prior to any alleged motive to lie. See, e.g., *Commonwealth* v. *Brookins*, 416 Mass. 97, 102-103 (1993).

Furthermore, delaying testimony about the existence of the prior complaint until after the defendant has damaged the victim's credibility with the "humiliating intimation that . . . [she] agreed to the attack or dreamt it up" can cause unwarranted prejudice to the Commonwealth. *Commonwealth* v. *Bailey*, *supra* at 397. It would wrest from a prosecutor the circumstances in which the evidence of the complaint is introduced. Other courts have similarly found these evidentiary doctrines to be inadequate substitutes for fresh complaint testimony. See, e.g., *State* v. *Hill*, 121 N.J. 150, 165 (1990).

b. *Changes to existing doctrine.* Our experience in reviewing the application of our "fresh complaint" doctrine in the thirteen years since the decision in *Commonwealth* v. *Licata*, *supra*, has led to the conclusion that some elements of our "fresh complaint" doctrine do not adequately reflect current knowledge

---

[21]The first complaint testimony that we discuss today is not "offered to prove the truth of the matter asserted," *Commonwealth* v. *Silanskas*, 433 Mass. 678, 693 (2001), and thus is not an exception to the rule against hearsay but rather "an exception to the usual rule that a prior statement of a witness concerning a material fact that is consistent with the witness's trial testimony may only be admitted on redirect examination." *Commonwealth* v. *Peters*, 429 Mass. 22, 27 n.6 (1999).

[22]We assume that a complainant will be available for cross-examination at trial, and thus our recent decision in *Commonwealth* v. *Gonsalves*, *ante* 1 (2005), is not implicated. See note 27, *infra*.

about victims' reactions to sexual assault, and do little to vindicate the underlying purposes of the doctrine.

First, a requirement of "promptness" or "freshness" no longer withstands scrutiny as a cure to the problem of juror stereotyping in cases of sexual assault. To the contrary, it may exacerbate the very misunderstandings the rule aims to counteract — that those victims who report "freshly" are inherently more credible than those who report at a later time — and contradicts our present understanding that victims often do not promptly report a sexual assault for a variety of reasons that have nothing to do with the validity of the claim of assault. See discussion *supra*. The "promptness" rule thus benefits only those victims whose complaints are "fresh," while reinforcing discredited notions that victims will "naturally" promptly disclose the assault. See *State* v. *Hill, supra* at 164. At a minimum, the promptness requirement places the imprimatur of the court on the misimpression that most "real" victims raise an immediate "hue and cry." At worst, the rule rewards perpetrators who are especially brutal or threatening during and after an assault, and thereby successfully procure their victims' prolonged silence.

Under the doctrine as we modify it today, ostensible "delay" in disclosing a sexual assault is not a reason for excluding evidence of the initial complaint; the timing of a complaint is simply one factor the jury may consider in weighing the complainant's testimony. See, e.g., *Greenway* v. *State*, 626 P.2d 1060, 1061 (Alaska 1980); *People* v. *Brown*, 8 Cal. 4th 746, 750-751 (1994); *State* v. *Troupe*, 237 Conn. 284, 298 (1996). Accordingly, we will no longer refer to this evidence as "fresh complaint" evidence, as "freshness" has no bearing on its admission. See *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 490, 492 (1991) (recognizing "fresh complaint" name discordant with disclosure after two years, although complaint testimony properly admitted). Rather, consistent with our focus on the evidence pertaining to the facts and circumstances surrounding the complainant's initial report of the alleged crime (discussed *infra*), we will henceforth refer to such evidence as "first complaint" evidence.

Second, in the future, we will no longer permit in evidence

testimony from multiple complaint witnesses, limiting the testimony to that of one witness — the first person told of the assault. The testimony of multiple complaint witnesses likely serves no additional corroborative purpose, and may unfairly enhance a complainant's credibility as well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime. See *Commonwealth* v. *Montanez*, 439 Mass. 441, 458 (2003); *Commonwealth* v. *Scanlon*, 412 Mass. 664, 671 n.5 (1992); *Commonwealth* v. *Licata, supra* at 659-660. Evidence that a complainant repeatedly complained of a sexual assault to several different persons in most instances will likely do no more to refute an inference of fabrication than permitting one first complaint witness to testify. A victim who is not fabricating an assault may tell only one other person of the assault, while a liar may spread the tale widely. Permitting a single first complaint witness to testify will accomplish the primary goal of the doctrine, which is to refute any false inference that silence is evidence of a lack of credibility on the part of rape complainants.

Where feasible, that single complaint witness will be the first or initial complaint witness, i.e., the person who was first told of the assault, and may testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint as part of the prosecution's case-in-chief. See *infra*. It is the alleged victim's first complaint, the point at which the accusation first surfaced, that is the most pertinent to the jury's understanding of what motivated the victim to come forward and is the most useful in assessing the victim's credibility (including assessing any specific defense theories attacking that credibility). Law enforcement officials, as well as investigatory, medical, or social work professionals, may testify to the complaint only where they are in fact the first to have heard of the assault, and not where they have been told of the alleged crime after previous complaints or after an official report.

In limited circumstances, a judge may permit the testimony of a complaint witness other than, and in lieu of, the very "first" complaint witness. For example, where the first person told of the alleged assault is unavailable, incompetent, or too young to

testify meaningfully, the judge may exercise discretion in allowing one other complaint witness to testify. In such circumstances, the prosecution must justify the substitution before trial in a motion in limine.

We retain that aspect of our current doctrine that permits the first complaint witness to testify to the details of the complaint itself. By details, we mean that the witness "may testify to the complainant's statements of the facts of the assault." *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 874 (2001). We are aware that most jurisdictions adhere to the rule that evidence of the complainant's report should be limited to the fact of the complaint only,[23] and that many hold the position that the details should be permitted only to rehabilitate the complainant after impeachment. In contrast, we continue to be persuaded that by allowing in evidence all of the details, the doctrine gives the fact finder "the maximum amount of information with which to assess the credibility of the . . . complaint evidence as well as the overall credibility of the victim." *Commonwealth* v. *Licata*, *supra* at 659, quoting Graham, The Cry of Rape: The Prompt Complaint Doctrine and the Federal Rules of Evidence, 19 Willamette L. Rev. 489, 511 (1983). Moreover, the "admission of a partial statement [without the details] might tend to discredit the complainant's testimony at trial as a recent fabrication rather than to corroborate it." *Commonwealth* v. *Blow*, 370 Mass. 401, 405 (1976). Conversely, admitting only the fact of the complaint might give an erroneous impression that it is completely consistent with the complainant's in-court testimony. Thus, being apprised of a first complaint without details is to ask "the jury to draw important inferences from imperfect materials, perfect materials being at hand and in the cognizance of the witness in the box. . . . '[N]othing ought necessarily to be left to speculation or surmise.' " *Commonwealth* v. *Bailey*, 370 Mass. 388, 395 (1976), quoting Hawkins, J., in *The Queen* v. *Lillyman*, [1896] 2 Q.B. 167, 177-178. Admitting details of the complaint "tends more satisfactorily than the rival rule to meet

---

[23]See *Commonwealth* v. *Licata*, 412 Mass. 654, 659 n.8 (1992) (reviewing case law from other jurisdictions). See also note 14, *supra*; *Commonwealth* v. *Montanez*, 439 Mass. 441, 445-446 n.5 (2003); *Commonwealth* v. *Peters*, 429 Mass. 22, 27 n.7 (1999).

in proper cases the humiliating intimation that the victim agreed to the attack or dreamt it up." *Commonwealth* v. *Bailey, supra* at 397. To the extent that jurors today are more informed in their understanding of sexual assault than they were when we decided *Commonwealth* v. *Licata, supra*, it is beneficial to provide those jurors with more, not less, information concerning the initial complaint. See *Commonwealth* v. *Montanez, supra* at 455 (Sosman, J., concurring).

Several aspects of our first complaint doctrine as now modified further protect defendants from the possibility of undue prejudice. First, as the Commonwealth will be limited to one complaint witness, our new rule takes into account any prejudicial "piling on" of such witnesses. Second, a defendant will be free to cross-examine both the first complaint witness and the complainant about the details of the complaint, and draw to the jury's attention any discrepancies in the complainant's story that come to light only as a result of this additional information. See *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992). Third, judges will retain their discretion to curtail direct or cross-examination to avoid any undue prejudice. *Id.* at 671 n.5.

In contrast to our prior rule enunciated in *Commonwealth* v. *Peters*, 429 Mass. 22, 30 (1999), the complainant may also testify to the details of the first complaint (i.e., what the complainant told the first complaint witness) and also why the complaint was made at that particular time.[24] This information is particularly relevant against the backdrop of frequent defense claims that delays in reporting sexual assault suggest fabrication, and that allegations and reports are made in retaliation against them. Additionally, initial disclosures of sexual assault, often frightening and traumatic for victims, may portray only a limited or censored account of the assault itself, with little or no specific explanation of the reasons for coming forward with the

---

[24]The complainant may testify in this manner only if a first complaint witness or a "substitute" complaint witness, see *supra*, is produced at trial who testifies regarding the complaint. Otherwise, the complainant may not testify to the fact of the complaint or its details unless the witness to the complaint is deceased or the judge determines that there is some other compelling reason for the witness's absence that is not the fault of the Commonwealth.

allegation.[25] Thus, information from the complainant (often unknown to the first complaint witness) explaining the timing of the complaint, her or his motivation for disclosing the assault to the particular person told and in the particular circumstances, and the manner in which the complainant made the disclosure, may be essential to the jury's understanding and appreciation of the first complaint testimony.

Also under our new rule, a first complaint witness may testify to the circumstances surrounding the initial complaint. By "circumstances," we mean that the witness may testify to his or her observations of the complainant during the complaint; the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the veracity of the complainant's allegations or assess the specific defense theories as to why the complainant is making a false allegation. See *People* v. *Brown*, 8 Cal. 4th 746, 762-763 (1994); *State* v. *Woodard*, 146 N.H. 221, 226 (2001). Contrast *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 874-875 (2001) ("fresh complaint" testimony about complainant's demeanor viewed as witness's interpretation of complainant's word and inadmissible).[26] Like the details of the complaint and the information about the timing of the complaint provided by the complainant, these circumstances may be critical as the jury consider the validity of the complaint and may be helpful in assisting them in understanding the timing of and motivations underlying the complaint. See *Commonwealth* v. *Montanez*, *supra* at 456-458 (Sosman, J., concurring). The goal

[25]See, e.g., A.E. Taslitz, *supra* at 24 ("A woman's first words about a rape may offer accounts that help to make things normal again. The words seek to smooth social relationships by minimizing the harm, and cultural expectations lead the victim to engage in self-blame. In short, the woman engages in denial and suppression of her experience, pain, and needs . . . . As she heals, she may regain that voice, telling more coherent, detailed, and honest stories").

[26]Much of this testimony, which is based on a witness's own observations of the complainant, is independently admissible on the basis that it speaks to the complainant's state of mind at the time of the first complaint. See *Commonwealth* v. *Montanez*, *supra* at 450; *Commonwealth* v. *Scanlon*, 412 Mass. 664, 671 (1992). We reiterate that, in testifying to the circumstances of the first complaint, particularly a complainant's demeanor, a first complaint witness may not testify to belief in the witness's truthfulness or otherwise supplant the fact finder's function in determining credibility. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 504 (1991).

of this new first complaint doctrine is to give the jury as complete a picture as possible of how the accusation of sexual assault first arose. That complete picture will allow them to make a fairer and more accurate assessment of the validity of that accusation, based on specific information about the people involved rather than on outdated stereotypes and generalities.[27]

First complaint testimony, including the details and circumstances of the complaint, will be considered presumptively relevant to a complainant's credibility in most sexual assault cases where the fact of the assault or the issue of consent is contested. However, where neither the occurrence of a sexual assault nor the complainant's consent is at issue, the evidence will serve no corroborative purpose and will not be admissible under the first complaint doctrine. For example, where the sole issue is the identity of the perpetrator, first complaint testimony will not be relevant or permissible under the doctrine. See, e.g., *State* v. *Troupe*, 237 Conn. 284, 305 n.20 (1996). See also *Commonwealth* v. *Montanez*, 439 Mass. 441, 458 (2003) (Sosman, J., concurring).

Jury instructions must be modified to reflect the changes to our doctrine adopted in this opinion. A proper instruction to the jury will now read:

"In sexual assault cases we allow testimony by one person the complainant told of the alleged assault. We call this 'first complaint' evidence. The complainant may have reported the alleged sexual assault to more than one person. However, our rules normally permit testimony only as to the complainant's first report. The next witness will testify about the complainant's 'first complaint.' You may consider this evidence only for specific limited purposes: to establish the circumstances in which the complainant first reported the alleged offense, and then to determine whether that first complaint either supports or fails to support the complainant's own testimony about the crime. You may not consider this testimony as evidence

[27]Because the complainant must always be available for cross-examination about the first complaint for the doctrine to apply, the Federal and State confrontation clauses pose no obstacle to the "first complaint" testimony we endorse today. See discussion *supra*. See also note 22, *supra*.

that the assault in fact occurred. The purpose of this 'first complaint' evidence is to assist you in your assessment of the credibility and reliability of the complainant's testimony here in court. In assessing whether this 'first complaint' evidence supports or detracts from the complainant's credibility or reliability, you may consider all the circumstances in which the first complaint was made. The length of time between the alleged crime and the report of the complainant to this witness is one factor you may consider in evaluating the complainant's testimony, but you may also consider that sexual assault complainants may delay reporting the crime for a variety of reasons."

As is the current practice, these instructions should be given to the jury contemporaneously with the first complaint testimony, and again during the final instructions. See *Commonwealth* v. *Licata, supra* at 660.[28]

Finally, because the modification of the out-dated "fresh complaint" doctrine that we announce today is an "exercise of our power of superintendence 'to regulate the presentation of evidence in court proceedings' [and] not a new constitutional rule," we apply the changes prospectively to only those sexual assault cases tried after the issuance of the rescript in this opinion. *Commonwealth* v. *Dagley,* 442 Mass. 713, 720-721 (2004), quoting *Commonwealth* v. *DiGiambattista,* 442 Mass. 423, 444-445 (2004). "In prior cases announcing new rules or requirements in the exercise of our superintendence power, we have declined to give the new rule or requirement retroactive effect." *Commonwealth* v. *Dagley, supra* at 720-721, and cases cited. The defendant is not entitled to the benefit of the new first complaint doctrine. See *State* v. *Troupe, supra* at 305-306 (applying similar doctrine prospectively). Contrast *Commonwealth* v. *Adjutant,* 443 Mass. 649, 667 (2005) (applying new rule of evidence to case where defendant argued for rule on direct appeal but otherwise applying new rule prospectively).[29]

*Conclusion.* For the reasons set forth above, there was no er-

---

[28]To the extent our prior cases conflict with the changes we make to the first complaint doctrine today, those cases and their progeny are overruled.

[29]We reconsidered the propriety of our existing "fresh complaint" doctrine,

ror in the testimony admitted at trial under the "fresh complaint" doctrine. Nor was there any error in the indictment, the sufficiency of the evidence, the two convictions based on separate acts, or the judge's decision to admit the defendant's prior conviction. The defendant's motion for a required finding of not guilty on the charge of forcible rape of a child under sixteen years was properly denied.

*Judgments affirmed.*

sua sponte, soliciting amicus briefs on the issue. See note 16, *supra.* Thereafter, the defendant argued that the "fresh complaint" doctrine should be abolished or limited.