COMMONWEALTH *vs.* STEVEN HAGGETT.

No. 09-P-2271.

Plymouth. November 12, 2010. - March 29, 2011.

Present: McHugh, Sikora, & Fecteau, JJ.

*Rape. Indecent Assault and Battery. Evidence,* First complaint, Relevancy and
   materiality, Credibility of witness, Cross-examination. *Practice, Criminal,*
   Cross-examination by prosecutor.

At the trial of indictments charging rape of a child with force and indecent as-
   sault and battery on a person under the age of fourteen years, the judge
   erred by allowing the complainant to testify, over objection, that she had
   reported to both her teacher and her guidance counsellor that she had been
   sexually assaulted by the defendant, where the Commonwealth chose not
   to present a first complaint witness, and where neither of these reports
   were her first complaint [171-172]; further, although the judge recognized
   the complainant's testimony as first complaint evidence, the judge commit-
   ted prejudicial error by refusing the defendant's request to instruct the jury
   as to the appropriate use of the complainant's testimony (i.e., to aid in
   their assessment of the complainant's credibility), where the judge's failure
   to so instruct allowed the jury to consider the testimony for its full substantive
   value, which improperly enhanced the complainant's testimony [172-173].
At the trial of indictments charging rape of a child with force and indecent as-
   sault and battery on a person under the age of fourteen years, a substantial
   risk of a miscarriage of justice arose when the complainant's guidance
   counsellor was permitted to testify, on cross-examination during the defend-
   ant's case, regarding her official investigative response to the complainant's
   report to her, where there was no valid purpose for the Commonwealth to
   elicit that testimony, which was not relevant to any issue in the case;
   where the defendant did not open the door for the Commonwealth to elicit
   that testimony; and where the effect of the testimony was to improperly
   enhance the complainant's credibility. [173-178]

INDICTMENTS found and returned in the Superior Court Depart-
ment on June 27, 2008.

The cases were tried before *Elizabeth B. Donovan,* J.

*Daniel N. Marx* for the defendant.

*Christine M. Kiggen,* Assistant District Attorney, for the
Commonwealth.

FECTEAU, J. The defendant appeals from a Superior Court jury conviction of rape of a child with force and indecent assault and battery on a person under the age of fourteen years. He complains of multiple errors in connection with the admission of testimony from the complainant and a guidance counsellor in violation of the first complaint doctrine of *Commonwealth v. King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006). Specifically, the defendant contends that the judge committed prejudicial error when the complainant was allowed to testify, over objection, that she had reported to both her teacher and her guidance counsellor being sexually assaulted by the defendant, notwithstanding that neither of these reports were her first complaint and that the Commonwealth called neither person to testify. Second, the defendant contends that the judge committed prejudicial error when she refused to instruct the jury on the nature and purpose of this "first complaint" evidence. Lastly, the defendant contends that there was a substantial risk of a miscarriage of justice when the complainant's guidance counsellor was permitted to testify, on cross-examination during the defendant's case, about the complainant's report to her, and that the counsellor reported the complainant's accusation to her parents, filed a G. L. c. 119, § 51A report (§ 51A report) with the Department of Social Services (department),[1] and assisted the complainant in reporting the event to the police. We reverse.

*Background.* During the trial in July, 2009, the Commonwealth called only one witness to testify during its case-in-chief, the complainant, whom we shall refer to as Sarah.[2] On direct examination, Sarah testified that the defendant, her mother's then boyfriend, lived with her and her mother from 2001 to 2003. Sarah, born on June 4, 1992, testified that on January 16, 2002, the defendant inappropriately touched her. On the previous day she, her mother, and the defendant were involved in a car accident. On January 16, Sarah had stayed home from school because she was still shaken up from the accident, her mother had gone to work, and the defendant had stayed at home with Sarah. Sarah testified that the defendant lay down next to her on the couch

---

[1] Now known as the Department of Children and Families.

[2] A pseudonym utilized by the parties in their briefs. See G. L. c. 265, § 24C.

while she was watching television. At some point, the defendant placed his hand on her thigh, gradually moved his hand inside her pajama pants, and then put his hand inside her underwear. The defendant touched her buttocks and penetrated her vagina with his fingers. While this happened, the telephone rang and the defendant stopped to answer the telephone. Right after he answered the telephone, the defendant put the telephone up against his shirt and told Sarah, "This never happened." Sarah did not talk to the defendant about what happened, nor did she discuss the defendant's abuse with her mother when her mother returned from work that day.[3]

In April of 2008, during her sophomore year in high school, Sarah attended a series of antiviolence lectures, including a sexual abuse and rape lecture given by a South Shore Hospital emergency room nurse. When Sarah heard the nurse lecture about the importance of reporting sexual abuse, she decided to speak to her guidance counsellor, Susan LeMay. Unable to locate LeMay, Sarah left her a note and went to speak with her English teacher, Helen Galambos.[4] Over the defendant's objection, Sarah testified that she told Galambos something had happened to her but did not go into "big detail." Again over the defendant's objection, Sarah testified that the next morning she explained "in detail" to LeMay that she "had been sexually as-

---

[3]On direct examination, Sarah testified that later that day when her mother returned home from work, she did not tell her about the defendant's abuse because she felt intimidated and scared by the defendant. During the time that the defendant lived with Sarah and her mother, Sarah saw the defendant and her mother argue frequently. Also, sometimes the defendant was nice to Sarah and at other times he yelled at her in front of her mother. Sarah further testified that she did not get along with the defendant, and that he was controlling over what she and her mother did. On redirect, Sarah stated she disapproved of her mother's lifestyle and wanted to live with her father.

[4]During a pretrial hearing on the Commonwealth's motion in limine for leave to call Galambos as the first complaint witness, defense counsel objected on the ground that reports to either Sarah's mother or Sarah's boyfriend preceded those to her teachers. In response, the prosecutor stated that if it turned out that Sarah's boyfriend was the first complaint witness, he did not intend to call a first complaint witness. At the point this hearing ended, the Commonwealth's intention to offer first complaint evidence was left in suspense. During the trial, however, when first complaint evidence was in the offing, it would have been better practice to conduct a voir dire hearing. See *Commonwealth* v. *Stuckich*, 450 Mass. 449, 455 (2008). See also note 8, *infra*.

saulted by one of [her] mom's former ex-boyfriends."[5] LeMay called the police and helped Sarah through the process of telling the police. Sarah was not asked, on direct or cross-examination, about any statements she may have given to the police.

Defense counsel's cross-examination of Sarah focused on alleged inconsistencies in her prior statements. Defense counsel asked Sarah about inconsistent statements she had made regarding who she had told first about the alleged sexual assault. Sarah testified that when she was thirteen years old she attempted to tell her mother about the abuse by the defendant, but was unable to do so. Defense counsel then elicited testimony that during a Sexual Abuse Intervention Network (SAIN) interview in April, 2008, Sarah reported that she had told her mother that something happened between herself and the defendant, saying only that "stuff" happened. Sarah also testified on cross-examination that she had told her boyfriend about the alleged abuse a few months before telling her teachers, but she did not testify as to what details she told him.[6]

Defense counsel also explored inconsistencies with what Sarah had testified to on direct examination and what she had reported during the SAIN interview. During the SAIN interview, Sarah reported that she did not remember what she had been wearing the day of the alleged sexual assault; she reported that after the defendant had picked up the telephone, he had continued touching her; and she did not report that the defendant had touched her buttocks. Finally, Sarah testified on cross-examination that when she spoke with LeMay, she told her of her previous attempt to report the sexual assault to her mother. Defense counsel asked nothing more about her discussion with LeMay.[7]

---

[5]As Sarah's testimony led into the subject of the antiviolence lectures at school, defense counsel began his series of objections, accurately anticipating the testimony concerning Sarah's reports to her teachers. The judge responded, "We are not getting into the — topic that they discussed at the [lecture], whatever it was, on sexual abuse and that it's never too late to report, and then who she reported to. I will allow that report as the first complaint. I will note your objection."

[6]Neither the Commonwealth nor the defendant called Sarah's boyfriend to testify at any point during the trial.

[7]Neither Galambos nor LeMay was called to testify by the prosecution. Indeed, the Commonwealth called no other witnesses apart from Sarah and presented no physical evidence against the defendant.

The defendant called three witnesses during his case: Sarah's mother, LeMay, and the defendant. Most relevant to this appeal is LeMay's testimony. During LeMay's direct examination, defense counsel primarily inquired about Sarah having previously told her mother about the defendant's alleged sexual assault. On cross-examination, the prosecutor elicited, without objection, testimony about the crisis intervention LeMay provided to Sarah. Specifically, LeMay testified that she filed a § 51A report with the department, informed Sarah's parents of the allegations and the § 51A report, and had Sarah speak to the police.

*Discussion.* 1. *Preserved error.* The defendant first contends that Sarah's testimony about how she reported the alleged sexual assault to her teachers and what she reported violated the first complaint rule. The defendant objected to this line of questioning. Further, the defendant requested an instruction on first complaint evidence, which the judge denied. Thus, we review these preserved claims for prejudicial error, which involves a two-part analysis: "(1) was there error; and (2) if so, was that error prejudicial. An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial." *Commonwealth* v. *Cruz,* 445 Mass. 589, 591 (2005), quoting from *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994).

The Commonwealth correctly conceded at oral argument that error occurred when Sarah testified on direct examination that she told Galambos and LeMay of being sexually assaulted by the defendant. In fact, it was error to allow this testimony for two distinct reasons, both of which violate the first complaint doctrine. First, given that the Commonwealth chose not to present a first complaint witness, Sarah's testimony recounting her reporting to Galambos and LeMay about the sexual assault was inadmissible. See *Commonwealth* v. *King,* 445 Mass. at 245 n.24 ("The complainant may testify in this manner only if a first complaint witness or a 'substitute' complaint witness . . . is produced at trial who testifies regarding the complaint.

Otherwise, the complainant may not testify to the fact of the complaint or its details unless the witness to the complaint is deceased or the judge determines that there is some other compelling reason for the witness's absence that is not the fault of the Commonwealth").

Second, this testimony was inadmissible because it became evident during Sarah's testimony on cross-examination that her report to LeMay was not her first complaint. On cross-examination, Sarah read into the record her SAIN interview responses in which she stated that closer in time to the sexual assault, she told her mother "something happened" between her and the defendant. Later during her cross-examination, Sarah admitted to having told her boyfriend about the sexual assault prior to reporting it to her teachers. Nonetheless, when this became apparent during Sarah's cross-examination, the judge declined the defendant's motion to strike the evidence of Sarah reporting the alleged sexual assault to LeMay and Galambos. If, as it appears, Sarah's report to LeMay was not her first report, her testimony regarding that report constituted inadmissible hearsay and was erroneously admitted.[8]

Although the judge recognized this testimony as first complaint evidence (see note 5, *supra*), she refused the defendant's request for appropriate jury instructions because no first complaint witness testified.[9] Upon the admission of such evidence, the judge's refusal to instruct the jury as to the appropriate use of such evidence was error. "As is the current practice, these

---

[8]This is not to say that Sarah's testimony regarding what she had told either her mother or her boyfriend of the alleged sexual assault could not have been qualified as admissible under the principles of first complaint, had one or the other testified for the Commonwealth and after appropriate voir dire. See *Commonwealth* v. *King, supra* at 243-244. On the other hand, after inquiry, the judge might have been in a position to permit substitution of another witness to provide first complaint evidence. See *ibid*; *Commonwealth* v. *Murungu*, 450 Mass. 441, 445-446 (2008). However, no proceeding occurred to determine what reports of the alleged sexual assault Sarah gave, specifically to whom and in what order they were made, in order to form the basis for such rulings.

[9]The judge allowed the defendant to argue credibility but refused to give the modified first complaint instruction requested by the defendant, stating, "[W]e have no first complaint testimony. No one came in, took this stand, and said that the complainant told me that [the defendant] did A, B, C and D. No one said that. So we are not going to have that."

instructions should be given to the jury contemporaneously with the first complaint testimony, and again during the final instructions." *Commonwealth* v. *King*, 445 Mass. at 248, citing *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992).

The defendant was prejudiced by these errors because this case depended on the jury's credibility determination of Sarah as there was neither physical evidence nor independent eyewitness testimony to corroborate Sarah's testimony. The purpose for the admissibility of first complaint evidence is limited to establishing the credibility of the complainant; however, admitting first complaint evidence without appropriate instruction to the jury improperly allows the jury to consider the first complaint evidence for its full substantive value. See *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 (2008) ("Although the witnesses were not called to recount the details, the fact that [the complainant] reported to them is the equivalent of saying that she repeated her account of the incident, i.e., it allows fresh complaint testimony through the back door. Repetition of the narrative tends to enhance the credibility of the complainant to the prejudice of the defendant").

"In the *Stuckich* decision, the Supreme Judicial Court explained that the prohibition on the admission of complaint evidence beyond that presented by the designated first complaint witness extends to testimony concerning the fact of additional reports, even if that testimony does not contain a detailed account of the [complainant's] allegations. As the court explained, such testimony 'is essentially the same as permitting those other witnesses to testify' and therefore violates the restriction contained in *King*." *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. 489, 493 (2009), quoting from *Commonwealth* v. *Stuckich*, *supra*. See *Commonwealth* v. *McCoy*, 456 Mass. 838, 846-847 (2010); *Commonwealth* v. *Velazquez*, 78 Mass. App. Ct. 660, 666 (2011). Therefore, we think that Sarah's credibility was improperly enhanced by her own testimony. That evidence was admitted in error to the prejudice of the defendant, and reversal of the convictions is compelled.

2. *Unpreserved error.* The defendant also complains that testimony from LeMay, Sarah's guidance counsellor, regarding her official investigative response to Sarah's report was erroneously

admitted during the Commonwealth's cross-examination of her. The defendant did not object to this testimony, and thus we review to see whether the evidence was improper and, if so, whether it created a substantial risk of a miscarriage of justice.[10] "An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence[]' the guilty verdict. *Commonwealth* v. *Freeman*, [352 Mass. 556, 564 (1967)]. In making that determination, we consider the strength of the Commonwealth's case against the defendant (without consideration of any evidence erroneously admitted), the nature of the error, whether the error is 'sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error,' *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986), and whether it can be inferred 'from the record that counsel's failure to object was not simply a reasonable tactical decision.' [*Ibid.*]" *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999) (footnote omitted).

The defendant called LeMay as a witness for a very limited purpose, which, in addition to establishing a record that LeMay was not the first person Sarah told of the alleged sexual assault,[11] was to highlight the inconsistency of Sarah's statements about what she told her mother.[12] See *Commonwealth* v. *Murungu*, 450 Mass. 441, 447 (2008) ("If, in an effort to establish

---

[10]We generally do not consider the admission of evidence that was introduced without objection to be error, per se. See *Commonwealth* v. *Stewart*, 398 Mass. 535, 543 (1986) ("hearsay evidence admitted without objection may be considered by the jury and may be given any probative value it possesses"). More properly, we review to determine whether the statements were improper and, if so, whether they created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). While, academically, we may question whether the admission of evidence without objection ought to follow the protocol outlined in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), for ineffective assistance of counsel claims, as a practical matter we note that the standard of review for unpreserved error has been equated with the second prong of that protocol, i.e., a substantial risk of a miscarriage of justice. *Commonwealth* v. *Delong*, 72 Mass. App. Ct. 42, 47 (2008). See *Commonwealth* v. *Randolph*, 438 Mass. 290, 295-296 (2002).

[11]LeMay testified that Sarah had told her that she had reported the sexual assault to her mother while in the seventh grade.

[12]During Sarah's direct examination, she stated that she did not tell her mother about the assault. During her cross-examination, Sarah initially stated that she attempted to, but did not tell her mother about the sexual assault by the defendant; following that testimony Sarah read into evidence her SAIN

that the first complaint was misleading, inaccurate or false, the defendant desires to show that the first person to whom the complainant made a complaint was in fact someone other than the proffered first complaint witness, or that the complainant did not complain at the time, to the person, or in the detail one would expect, it is not our intention to preclude such evidence on the part of the defendant"). However, on cross-examination of LeMay, the prosecutor elicited testimony, without objection, that after Sarah told her of the assault, LeMay took "crisis intervention" steps to assist Sarah in further reporting the matter. LeMay testified that she informed Sarah's parents, filed a § 51A report with the department, and assisted Sarah in reporting it to police. The crisis intervention evidence from LeMay, however, should have been excluded because there was no valid purpose for the Commonwealth to elicit that testimony.

We recognize that the general rule of evidence in Massachusetts does not limit cross-examination of witnesses to matters raised on direct examination. See *Commonwealth* v. *Gagnon*, 408 Mass. 185, 192 (1990); Mass. G. Evid. § 611(b)(1) (2010) ("A witness is subject to reasonable cross-examination on any matter relevant to any issue in the case, including credibility and matters not elicited during direct examination. The trial judge may restrict the scope of cross-examination in the exercise of judicial discretion"). However, while the Commonwealth has a "right to reasonable cross-examination of witnesses called by the defendant . . . , the trial judge has considerable discretion to limit such cross-examination when it . . . touches on matters of tangential materiality." *Id.* at § 611(b)(1), (2) note, at 194-195. Here, the crisis intervention evidence had no relevance, and LeMay should not have been permitted to testify about it. See *Commonwealth* v. *King*, 445 Mass. at 245 ("judges will retain their discretion to curtail direct or cross-examination to avoid any undue prejudice"); *Commonwealth* v. *Shaheen*, 15 Mass. App. Ct. 302, 308 (1983) ("The trial judge is not required to permit questions on cross-examination which are not properly

interview responses in which she stated that she told her mother that something happened between herself and the defendant.

The defendant called LeMay to testify that Sarah had told her that she had previously reported the sexual assault to her mother and that her mother failed to follow up.

formed to elicit relevant testimony, and has discretion to exclude testimony pertaining to collateral matters" [citation omitted]); *Commonwealth* v. *McClendon*, 39 Mass. App. Ct. 122, 129-132 (1995) (court held that it was improper to cross-examine defendant on prior bad acts that were otherwise inadmissible).

We disagree with the Commonwealth's contention that the erroneous admission of Sarah's testimony regarding what she reported to LeMay, as well as Galambos, was cured by the defendant trying to point out inconsistencies in Sarah's testimony and by calling LeMay as a defense witness.[13] LeMay's crisis intervention testimony elicited by the Commonwealth on cross-examination was neither intended nor designed to rehabilitate LeMay, and it did not serve to properly rehabilitate Sarah; there was no effort to qualify this testimony as prior consistent statements. Whether intended or not, its effect was to improperly enhance Sarah's credibility. Certain additional complaint evidence, however, may be admissible if it serves to counter the defendant's contention that aspects of the police investigation following the complainant's report of sexual assault demonstrated police bias and incompetence. See *Commonwealth* v. *Arana*, 453 Mass. 214, 226-227 (2009). Here, the defendant did not raise this type of theory at trial.

Furthermore, the defendant calling LeMay as a witness did not open the door for the Commonwealth to elicit evidence from LeMay about what crisis intervention steps LeMay took, because the defendant's case never tried to show that Sarah made inconsistent statements to LeMay about the alleged sexual assault. On Sarah's cross-examination, the defendant tried to highlight that her testimony was different than her descriptions given during her SAIN interview. The defendant did not attempt to exploit inconsistencies in statements Sarah gave to LeMay,

---

[13]The Commonwealth's reliance on *Commonwealth* v. *McCoy*, 56 Mass. 838 (2010), is misplaced. In *McCoy*, the defendant tried to point out inconsistencies in the complainant's testimony, but did not object to any of the erroneous testimony. *Id.* at 850-853. The court determined that there was no substantial risk of a miscarriage of justice because the defendant's case focused on the victim's credibility. *Ibid.* Here, the defendant objected to fundamental errors that violated principles established in *Commonwealth* v. *King*. The defendant repeatedly objected to these errors, and the errors prejudiced the defendant. Evidence was improperly admitted, and it served to aggravate the first complaint errors discussed above.

the police, or the department. Under these circumstances, the defendant ought not be penalized for pointing out inconsistencies when the case presented against him included such a fundamental violation of the first complaint doctrine as discussed above. Therefore, it was irrelevant for the jury to hear about what LeMay did after Sarah's disclosure. See *Commonwealth* v. *Stuckich*, 450 Mass. at 457 ("The fact that the Commonwealth brought its resources to bear on this incident creates the imprimatur of official belief in the complainant"); *Commonwealth* v. *Velazquez*, 78 Mass. App. Ct. at 668-669.

Moreover, the Commonwealth impermissibly attempted to bolster Sarah's credibility by linking it with LeMay's actions after Sarah's disclosure. In his closing argument, the prosecutor implied that Sarah would not have made such disclosures and LeMay would not have acted as she did if Sarah was not telling the truth. See *Commonwealth* v. *Stuckich*, *supra* ("It is unnecessary and irrelevant to the issue of the defendant's guilt, and is extremely prejudicial. . . . [T]he fact that [the first complaint witness] was mandated to, and did, file a § 51A report establishes nothing other than an impermissible inference that [she] believed the complainant. It has no relevance to whether the defendant in fact committed the acts charged, and the jury did not need to know how the complaint of abuse evolved into the case before them"); *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. at 497 ("any marginal probative value that the evidence may have had apart from corroboration was significantly outweighed by its likely prejudicial impact").

As in *Commonwealth* v. *Monteiro*, we consider this evidence not in isolation but aggregated with the first complaint errors discussed above.[14] See *ibid.* "We fail to see how [Sarah's] multiple reports or the testimony regarding the SAIN interview served a legitimate purpose independent of first complaint. The evidence was either duplicative of the [improperly admitted complaint] testimony or directed at matters (such as the extent to which investigators apparently credited [Sarah's] allegations)

[14]Had this case involved only LeMay's cross-examination testimony, the Commonwealth's argument of the similarity to *Commonwealth* v. *McCoy* would be more persuasive. See note 13, *supra.* However, we cannot consider this error in isolation.

that were irrelevant to the jury's inquiry. But even if some aspect of this evidence could be said to have related to issues beyond pure corroboration of [Sarah's] accusations, its exclusion would not have deprived the jury of a fair and accurate picture of the Commonwealth's case." *Ibid.* On this trial record, we are unable to state that the admission of testimony regarding investigative steps was appropriate to counter a defense contention. Contrast *Commonwealth* v. *Arana*, 453 Mass. at 227 (circumstances of police involvement were relevant and admissible, not as first complaint, but as integral piece of Commonwealth's response to defendant's theory that complainants and their parents were motivated by their lawsuit and that police were complicit in this effort); *Commonwealth* v. *Kebreau*, 454 Mass. 287, 297-300 (2009) (endorsing admission of testimony from other complaint witnesses not as multiple first complaint testimony but to respond to defense contentions); *Commonwealth* v. *McCoy*, 456 Mass. at 847 ("While testimony detailing an investigation generally is not allowed unless it is from the first complaint witness or in response to a defense theory, here, the limited testimony served the independent purposes of proving background information and laying a foundation for the admission of physical evidence included in the sexual assault examination kit").

*Judgments reversed.*

*Verdicts set aside.*