NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-89

COMMONWEALTH

vs.

DOMINIC D., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After trial in the Juvenile Court, a jury found the juvenile defendant delinquent of rape of a child with force and two counts of indecent assault and battery.  On appeal, the juvenile contends that he was denied a fair trial due to various evidentiary rulings, certain jury instructions, and the prosecutor's closing argument.  We affirm.

Background.  The victim met the juvenile in middle school when she was in the sixth grade.  The two began dating the following summer, hanging out with friends, watching sports, and playing games.

In the spring of 2019, when the victim was thirteen years old, the juvenile came over to the victim's house where she was

babysitting her nieces and nephew.  The victim told the juvenile to stay with the kids in the living room while she went to a bedroom to retrieve a television remote control.  After grabbing the remote control, the victim turned around to find the juvenile "just there."  He began kissing and touching her all over her body.  She said "no," but he persisted.  She told him that she did not want to do anything and that she was going to go into the living room and put on a movie for the kids.

While facing the victim, the juvenile pushed her onto the bed and got on top.  He then flipped her over so that she was face down on the bed and grabbed her two hands above her head.  She was wearing sweatpants or leggings, which he pulled down before his penis entered her vagina.  The victim felt that she could not scream because it would attract the attention of the children.  Instead, she tried to physically free herself from the juvenile's grip as he held on to her hands with one hand and to her hips with the other.  After he ejaculated, he asked what he should do, referring to cleaning up.  He then grabbed a sock, belonging to the victim's young niece, and wiped himself.  The victim told the juvenile to call his father to pick him up, and he did.

Afterwards, the juvenile told the victim that he did not know why he did what he did, he did not know what had overtaken him, and that he was sorry.  The juvenile also told the victim

that, if she told anyone about what had happened, he would kill himself. Afraid that he would hurt himself and that she would be to blame, the victim continued in a relationship with the juvenile. Subsequently, when the victim would say that she needed to separate from him, to be left alone, the juvenile would say that he would kill himself if the victim left him.

Later, in June 2019, the victim went to an after-school dance, followed by a game of "manhunt," an outdoor hide-and-seek game in the dark, with some friends around her house. Afterwards, the victim invited a couple of her best friends to sleep over. That night, sitting on the kitchen floor, the victim told her friends that the juvenile had forced her to have sex with him and she explained to them how it had happened. The friends told the victim that she had to break up with the juvenile. In the presence of her friends, the victim then had a videocall with the juvenile and told him that she was breaking up with him because of what he had done to her. The juvenile hung up. The victim called back because she was worried about him. In the subsequent videocall, the juvenile was crying, saying he had a knife and that he was going to kill himself. Afraid that the juvenile would harm himself, the victim continued to keep in contact with him.

Discussion. 1. First complaint. Prior to trial, the judge conducted a voir dire and determined that one of the

3

victim's best friends would be designated as the first complaint witness; this witness would later testify as the last witness in the Commonwealth's case. The Commonwealth's first witness was a police detective who served as a school resource officer at the middle school attended by the victim. When the prosecutor referenced a date on which the detective spoke with the victim at school, defense counsel objected, arguing that the expected testimony would constitute a subsequent first complaint. The prosecutor clarified that she would not elicit the substance of the conversation but only the detective's observations of the victim, to which defense counsel responded that such observations were irrelevant and prejudicial. The trial judge overruled the objection. On appeal, the juvenile contends that the judge erred by admitting subsequent first complaint testimony. We discern no prejudicial error.

First complaint testimony is that which relates a sexual assault victim's first disclosure regarding the assault. See Commonwealth v. King, 445 Mass. 217, 218-219 (2005), cert. denied, 546 U.S. 1216 (2006). See also Mass. G. Evid. § 413(a) (2025). In addition to the victim, only one other witness may testify to the victim's first complaint of the sexual assault. See King, supra at 219. Unless a law enforcement officer is the first complaint witness, an officer will not ordinarily testify to the complaint. Id. at 243. An officer's testimony may,

4

however, include or imply a victim's complaint of sexual assault if it serves some purpose other than to corroborate the victim's testimony and its probative value outweighs its prejudicial effect.  See Commonwealth v. Dargon, 457 Mass. 387, 399-400 (2010).  See also Mass. G. Evid. § 413(b).

Here, the police detective witness testified that she was at the middle school at about 9 A.M. in mid-November 2019, when she had a conversation with the victim within an administrative office.  The detective described the victim as "visibly upset. She was crying.  She was looking down.  Like, wringing of the hands.  Just obviously . . . visibly upset."  After speaking with the victim, the detective contacted the victim's parents, wrote a report, and referred the matter to another agency.  She interviewed individuals identified by the victim including her two best friends.  The victim later provided to the detective by e-mail certain communications -- Snapchat messages and text messages -- between the victim, her two friends, and the juvenile.  The detective turned over the communications to the District Attorney's office.

The detective did not mention the substance or even the topic of conversation she had with the victim.  Rather, her testimony served to explain to the jury the general course of the investigation and specifically how the police obtained the communications which were later submitted into evidence.  See

5

Commonwealth v. Hoime, 100 Mass. App. Ct. 266, 276 (2021) (detective's testimony regarding evidence obtained from victim during interview did not violate first complaint rule as it served to lay foundation for physical evidence). Moreover, the testimony served to forestall a Bowden defense, see Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980), one which defense counsel explicitly stated that he was considering pursuing. See Hoime, supra (detective's testimony that investigation ceased because it was too emotional for victim, but that investigation resumed several months later after victim reengaged, did not violate first complaint rule as it served to meet anticipated defense).

Likewise, testimony regarding the victim's demeanor was relevant to rebut the juvenile's defense, foreshadowed in his opening statement, that the victim had fabricated the rape. See Commonwealth v. Santos, 465 Mass. 689, 700-701 (2013) (testimony regarding victim's demeanor from witness who was not designated first complaint witness did not constitute complaint testimony and was relevant to rebut defense theory that event was fabricated). That the jury might infer that the victim reported the sexual assault to the detective at that time did not convert the detective's otherwise admissible testimony into an inadmissible subsequent complaint. See Commonwealth v. Arana, 453 Mass. 214, 228-229 (2009) (first complaint doctrine not

6

intended as shield to bar jury from fair picture of Commonwealth's case).

The purpose of the limitation of a single first complaint is not to hide the fact that the victim ever spoke of the assault again; rather, it is to minimize the risk of unfair bolstering of the victim's testimony and of prejudice to the defendant by avoiding repetition of the details of the assault. See King, 445 Mass. at 243. Here, the detective's testimony did not express any belief in the victim's complaint or disclose any details of the assault. See Commonwealth v. McCoy, 456 Mass. 838, 851-852 (2010) (defendant not prejudiced by erroneous, cumulative first complaint testimony where no witness expressed belief in victim's claims and no one other than designated first complaint witness disclosed details of allegations). Given the valid purposes for offering the detective's testimony and the fact that no complaint was actually disclosed, there was no violation of the first complaint rule and no abuse of discretion in allowing the detective's testimony.

To the extent that there was any error in the admission of the detective's testimony, however, it was nonprejudicial. This is not a case where the Commonwealth unduly emphasized its investigation of the victim's complaint, thereby creating "the imprimatur of official belief in the [victim]." Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008) (evidence of numerous

7

reports and interviews involving multiple agencies and detailed testimony concerning each process was "extremely prejudicial"). The Commonwealth made no mention of any interview with the victim; it was defense counsel who introduced the fact that the victim was later interviewed (by someone other than the detective) about the rape. Moreover, the detective's testimony was brief and general, spanning less than ten pages of transcript, and she was the first witness in a trial that spanned two days. Finally, the substance of the testimony served only to expose what was implicit in the fact that the juvenile was charged and brought to trial.

2. Cross-examination. Prior to trial, the Commonwealth moved in limine to exclude evidence of bad character, bad reputation, and bad acts of the victim. The juvenile had no objection to the motion, and the judge allowed it. At trial, defense counsel cross-examined the detective, referencing the demeanor testimony, and asked her, "When you got to the school that day, were you also made aware that [the victim] had been using some racial language[?]" The question drew an objection from the prosecutor on the basis that it violated the court's ruling barring bad act evidence of the victim. Defense counsel explained that the detective's demeanor testimony "opened the door" to allow in evidence that there may have been some reason,

other than the implied rape disclosure, that the victim appeared emotionally upset; the judge sustained the objection.[1]

On appeal, the juvenile contends that the judge's ruling infringed his right to confrontation by unduly limiting cross-examination.  The right to confrontation is not absolute, and the scope of cross-examination rests largely in the discretion of the trial judge.  See Commonwealth v. Jacques, 494 Mass. 739, 746 (2024).  In determining whether the juvenile's right to confrontation has been infringed by unreasonable limitation on cross-examination, we weigh the materiality of the witness's direct testimony and the degree of the restriction on cross-examination.  See id.

Here, the witness testified briefly and generally about the course of the investigation leading up to the collection of communications which was submitted into evidence at trial.  Her testimony did not concern the substance of the crime.  The materiality of the direct testimony was thus limited.  The restriction on cross-examination was likewise limited.  As agreed to by all at the outset of the case, the parties were prohibited from introducing bad act evidence relating to the victim.  When defense counsel explained that she wanted to raise the racial slur issue to point out an alternative reason that

---

[1] The juvenile also moved for a mistrial, which was denied, but he does not raise that issue on appeal.

the victim may have been emotionally upset, the judge made "crystal clear" that "the only . . . line of questioning not allowed" was "anything having to do with the racial issue."

Thus, defense counsel was not prohibited from exploring the line of inquiry, only from doing so in a fashion that injected race into the case. There was ample available evidence that the victim had other reasons to be emotionally upset, and any of those reasons could have been used for the same line of inquiry. For example, the victim testified to her concern over the family having two court cases and her parents trying to gain custody of her sister's children. Her text messages reflected that she felt extreme pressure from her parents to the point that she wanted "to cut again," and that she had depression and anxiety.

Defense counsel otherwise had full range of cross-examination, and she took advantage of it. She raised an issue of bias with the detective by pointing out the detective's relationship with the victim's father. Although counsel declined to cross-examine the first complaint witness, she challenged the victim's credibility by pointing out that the victim had given several different timeframes for when the rape occurred, she had failed to provide certain post-breakup text messages to the police, she likened her experience to that of a fictional character in a movie, and she continued in a relationship with the juvenile after the rape took place. There

10

was no abuse of discretion in this narrow limitation of cross-examination.

3. Limiting instruction. Prior to trial, defense counsel requested that a limiting instruction on the use of first complaint testimony be given at the time of the victim's testimony as well as at the time of the testimony of the first complaint witness. The judge declined to give the instruction at the time of the victim's testimony on the ground that it might confuse the jury.[2]

At trial, after the victim testified regarding the details of the rape, she related that the first time she disclosed the rape to anyone was in June 2019 when her two best friends spent the night at her house. Following the victim's testimony, the judge gave a limiting instruction on first complaint evidence, as an introduction to the first complaint witness whose testimony followed the victim's testimony. The limiting instruction on first complaint evidence was given again during the final charge to the jury.

On appeal, the juvenile contends that the judge committed prejudicial error in declining to give a limiting instruction at the time of the victim's testimony about the complaint. Even

_____

[2] We note that the model instruction, taken from King, 445 Mass. at 247-248, appears to contemplate that the instruction will be given in relation to the first complaint witness, not the victim.

11

assuming error, it was nonprejudicial.  See Commonwealth v. Lewis, 91 Mass. App. Ct. 651, 663 (2017) (although contemporaneous limiting instruction on first complaint testimony recommended, it is "not a strict requirement" [citation omitted]).  The limiting instruction was given immediately after the victim's testimony, as well as in the final instructions, both of which occurred on the same day.  The instructions informed the jury that testimony regarding a victim's first disclosure of sexual assault is admitted for the limited purpose of assisting the jury in its credibility determinations by allowing the jury to consider whether the disclosure supports or detracts from the victim's testimony about the crime.  Because the limiting instruction on first complaint testimony was twice given, in close temporal proximity to the relevant testimony, the failure to give it during the victim's testimony was not prejudicial.  Contrast Commonwealth v. Cruz, 98 Mass. App. Ct. 383, 389-390 (2020), and Commonwealth v. Haggett, 79 Mass. App. Ct. 167, 172-173 (2011), both cases in which there was no first complaint witness, but the victim testified to making multiple disclosures without any limiting instruction at trial.

4.  Other bad acts.  Prior to trial, the Commonwealth moved to introduce certain bad acts of the juvenile to show the hostile nature of his relationship with the victim.  See

12

Commonwealth v. Linenkemper, 104 Mass. App. Ct. 467, 472 (2024) (in assault case, bad act evidence admissible to show hostile nature of relationship between defendant and victim who were romantically involved).  The prosecutor stated that the evidence would come in largely through the victim's testimony but that there were also text messages.  Defense counsel objected "for the record," stating that she also had text messages that would arguably contradict the victim's account of the nature of their relationship.  The judge allowed the motion to admit the evidence generally, stating that the ruling was subject to how the evidence came in and any other objections made at that time.

At trial, the victim testified to two instances when the juvenile persisted in groping her after she requested he stop.  Additionally, two messages between the juvenile and the victim were admitted into evidence.  One was a Snapchat message in which the juvenile said that he was sorry for putting his hand back on her after she had moved it away.  The other was a text message in which the juvenile apologized for touching her and putting his hand back after she had moved it away.  The victim stated that each message related to a separate incident, and that both had occurred prior to the rape.

On appeal, the juvenile faults the trial judge for failing to restrict the number of bad acts addressed and the amount of detail elicited, yet defense counsel made no such objection

13

during the hearing on the motion in limine or at trial.  A trial judge has broad discretion in admitting bad act evidence.  See Commonwealth v. Facella, 478 Mass. 393, 407 (2017).  Here, the victim related two instances during the relationship where the juvenile continued to touch the victim after she refused his advances.  In each instance, the juvenile later apologized and promised not to do it again.  The bad act evidence was characterized as touching without permission and failing to respect boundaries.  The nature of the bad acts and the level of detail given in no way overwhelmed the evidence of the rape.  Cf. Commonwealth v. Dwyer, 448 Mass. 122, 128 (2006) (victim testified to seven uncharged sexual assaults and described each in detail).  There was no abuse of discretion.

The juvenile also faults the judge for failing to give a sua sponte contemporaneous instruction limiting the use of the bad act evidence.  But a trial judge is not required to give such a limiting instruction without a request.  See Commonwealth v. Peno, 485 Mass. 378, 395-396 (2020) (timing of limiting instructions ultimately at discretion of judge).  Here, the judge did instruct the jury in the final charge that any evidence presented concerning other bad acts was not to be used as proof that the juvenile had a criminal personality or bad character, or as a substitute for proof that the juvenile committed the crime charged, or to conclude that if he committed

14

other bad acts he must have committed the charged crime.
Moreover, the prior bad acts were referenced appropriately in
closing, with the prosecutor arguing that they demonstrated the
manipulative nature of the juvenile's relationship with the
victim.  We discern no abuse of discretion from the lack of a
sua sponte contemporaneous limiting instruction.  See Peno,
supra at 396 (where no limiting instruction on bad act evidence
requested or given, instruction in final charge sufficient).

5.  Hearsay.  The juvenile complains of the "volume and
weight" of "improper hearsay" admitted, however there was no
objection at trial, so we review for a substantial risk of a
miscarriage of justice.  See Commonwealth v. McCoy, 456 Mass.
838, 850 (2010).  The statements complained of include the
victim's testimony and text messages to the effect that (1) she
told the juvenile that she was breaking up with him because of
what he did to her, (2) the juvenile threatened to hurt or kill
himself if the victim told anyone or if she broke up with him,
and (3) she told the juvenile that she did not have any friends
anymore because of him.

Hearsay is an extrajudicial statement offered to prove the
truth of the matter asserted.  See Commonwealth v. Cohen, 412
Mass. 375, 393 (1992); Mass. G. Evid. § 801 (2025).  It is
generally inadmissible unless allowed by another evidentiary
rule.  See Commonwealth v. Markvart, 437 Mass. 331, 335 (2002);

15

Mass. G. Evid. § 802 (2025).  The challenged statements do not constitute hearsay because they were not offered to prove the truth of the matter asserted.  In other words, the statements were not offered to prove the real reason that the victim broke up with the juvenile, or to prove that the juvenile in fact intended to hurt or kill himself, or to prove that the victim actually had no friends because of the juvenile.

Rather, the statements were offered to explain the victim's delay in reporting the rape (concern that the juvenile might hurt or kill himself), the circumstances in which she first disclosed the rape (after feeling isolated, she saw an opportunity to confide in her friends following a school dance), and the reason that she continued to be in contact with the juvenile after the rape (his continued threats of self-harm). All of these statements were properly admitted.  See King, 445 Mass. at 245-246 (under first complaint doctrine, victim may testify as to circumstances of complaint, why it was made at particular time to particular person, as relevant to victim's credibility).  See also Arana, 453 Mass. at 225 (evidence of victim's state of mind or behavior following crime has long been admissible if relevant to contested issue in case, like whether rape was fabricated).  There was no error in the admission of the challenged testimony.

16

6. Closing argument. The juvenile argues that the prosecutor's comment in closing argument that the victim was "very honest" constituted improper vouching. As there was no objection at trial, we review for a substantial risk of a miscarriage of justice. See Commonwealth v. Ferreira, 460 Mass. 781, 788 (2011). Improper vouching occurs when an attorney expresses a personal belief in the credibility of a witness or indicates knowledge independent of evidence before the jury. See Commonwealth v. Muller, 477 Mass. 415, 433 (2017). Viewed in context of the entire closing, it is evident that the prosecutor was not expressing her personal belief or indicating extrajudicial knowledge of the situation. See Commonwealth v. Kapaia, 490 Mass. 787, 801 (2022) (challenged statements in closing viewed in context of entire argument).

After acknowledging the juvenile's theory that the victim must have fabricated the rape because she continued to be in contact with him afterwards, the prosecutor stated,

"So, when you ask yourself why is there a video of [the victim] with her rapist on a couch after it happened, and 'it' being the incident in the bedroom, and why she continued to message him on Snapchat, I want you to think about that because [the victim] was very clear and very honest and forthcoming while answering her questions as to why that was taking place. She did not want to carry the weight and the responsibility of someone that she admittedly on the stand said she liked. And, in the meantime, she was getting hurt."

17

The prosecutor was arguing that the victim should be believed based on how she comported herself on the witness stand as well as because she expressed care and concern for the juvenile, even though he had raped her. Cf. Muller, 477 Mass. at 433 (prosecutor's statement that witness was "a very moving witness, a very candid and honest witness" deemed proper in context); Commonwealth v. Sanders, 451 Mass. 290, 297 (2008) (prosecutor's statement that witness was "absolutely honest" deemed proper); Commonwealth v. Leary, 92 Mass. App. Ct. 332, 338 (2017) (prosecutor's statement "that was him being honest" deemed proper). The statement was not improper vouching but rather proper argument on credibility.

Adjudications of delinquency affirmed.

By the Court (Ditkoff, Singh & Smyth, JJ.[3]),

Clerk

Entered: December 24, 2025.

---

[3] The panelists are listed in order of seniority.